GRAHAM FARMS, INC. ET AL. *v.* INDIANAPOLIS
POWER & LIGHT COMPANY.

[No. 30,815. Filed February 5, 1968.]

*Claude M. Warren,* of Indianapolis, *Jack E. Hayes,* and *Robert O. Chambers,* of Washington, for appellants.

*Carl M. Gray,* of Petersburg, *Alvin Seal,* of Washington, *Ralph W. Husted, Marcus E. Wood,* and *Charles M. Wells,* of Indianapolis, for appellee.

*Von E. Livingston, David B. Keller, Dildine, Haynie & Yoder,* of Fort Wayne, of counsel, for Indiana & Michigan Electric Co.; *G. R. Redding, Dan R. Winchell, Joseph B. Carney, Baker & Daniels,* of Indianapolis, for Indianapolis Water Co., Panhandle Eastern Pipe Line Co., Truckline Gas Co., *Harry T. Ice, George B. Gavit, Ice, Miller, Donadio & Ryan,* of Indianapolis, for Midwestern Gas Transmission Co., *John C. Lawyer,* of Hammond, *William F. Welch,* of Indianapolis, *Lawyer, Schroer & Eichhorn,* of Hammond, for Northern Indiana Public Service Co., *Paul G. Jasper, Greg K. Kimberlin,* of Plainfield, *McHale, Cook & Welch,* of Indianapolis, for Public Service Company of Indiana, Inc., *Frederick P. Bamberger, William P. Foreman,* and *Bamberger, Foreman, Oswald & Hahn,* of Evansville, for Southern Indiana Gas and Electric Co., amici curiae.

JACKSON, J.—The appellee, by its complaint, alleged that it is a corporation organized under the laws of this state and is authorized by its articles of incorporation to engage in the following activities among others: To furnish, supply and vend electricity for light, heat and power and engage in any and all business incident thereto; to acquire, construct, maintain, own and operate plants and facilities for the manufacture, generation, transmission and distribution of electricity and to furnish, supply and transmit and distribute electric energy to the public or to any town or city in the State of Indiana. Appellee is a public utility engaged in such business with its principal place of business in Indianapolis, Marion County, Indiana, and under the laws of the State of Indiana is authorized and empowered to take, acquire, condemn and appropriate land and real estate or any interest therein for carrying out such purposes and objects, together with all accommodations, rights and privileges deemed necessary to accomplish the purposes for which the property is taken. That the appellant, Graham Farms, Inc., is the owner of certain real estate in said complaint described. That the appellee is constructing an electric generating station on White River in Pike County, Indiana, in order to meet present and future requirements for electricity of its customers. To make said generating station an integral part of its public utility system it is necessary for appellee to construct, own, operate and maintain a high voltage electric transmission line for the delivery of electric energy from said generating station to plaintiff's electric transmission and distribution system in Marion County, Indiana.

Appellee's complaint further alleged that for the purpose of locating, constructing, reconstructing, operating, maintaining, replacing and removing said transmission line, it is necessary for appellee to appropriate and condemn an easement and right of way, together with the right of ingress and egress, in, over and upon a part of the real estate heretofore

described in the complaint. The tract to be appropriated for such purposes being more particularly described as follows:

"A strip of ground one hundred fifty (150) feet in width, being seventy-five (75) feet on either side of the following described centerline: Beginning at a point on the south line of the southeast quarter of the Northwest Quarter of Section Thirty-six, Township Three North, Range Seven West of the Second Principal Meridian, which point is seven hundred thirty-two (732) feet easterly along said south line of the southeast quarter of the northwest quarter from the southwest corner of said southeast quarter of the northwest quarter; thence northeasterly sixty-four (64) feet to a point which is seven hundred sixty-one (761) feet east and fifty-nine (59) feet north of said southwest corner of the southeast quarter of the northwest quarter; thence, deflecting four (4) degrees and forty-eight (48) minutes to the left, continue northeasterly two thousand eight hundred twenty (2820) feet to a point on the north line of the northeast quarter of said Section Thirty-six, which point is four hundred ninety-six (496) feet easterly along said north line of the northeast quarter from the northwest corner of said northeast quarter."

Appellee's complaint contained other allegations relative to the type, construction, location, etc. of the proposed towers, lines, fences and other structures necessary to be located and/or removed therefrom and concluded with the allegations that it had endeavored to purchase said right of way and easement from the appellant, Graham Farms, Inc., but had been unable to agree with said appellant for its purchase. Judgment was asked accordingly.

Thereafter on August 11, 1964, appellant, Graham Farms, Inc., filed its objections to the complaint. Appellee filed a demurrer to appellant's objections on August 20, 1964. On August 28, 1964, the trial court sustained appellee's demurrer to all of appellant's objections. On September 25, 1964, appellant, Graham Farms, Inc., filed its motion below to reconsider the ruling on appellee's demurrer. The trial court granted the motion to reconsider the ruling on the demurrer to the objections to appellee's complaint and, after hearing argu-

ment of counsel, sustained said demurrer to objections numbered 1, 2, 3, 4, 5, 6, 10, 11, 12, 13 and 14 and overruled said demurrer to objections 7, 8 and 9. The objections withstanding the demurrer read as follows, to-wit:

"7. The real estate Plaintiff proposes to appropriate and condemn lies within two (2) miles of the corporate limits of the said City of Washington, Indiana, which said city is a municipal corporation duly organized and existing by virtue of the laws of the State of Indiana. Pursuant to the laws of the State of Indiana, the said City of Washington has duly created a Plan Commission in order to promote the orderly development of the governmental units of said city and of its environs; and pursuant to the laws of the State of Indiana and to the Ordinance of said city creating such Plan Commission, said Plan Commission has jurisdiction within the corporate limits of said city and two (2) miles from the corporate limits of said city.

8. Pursuant to the laws of the State of Indiana and to the Ordinances of said City of Washington, said city and its Plan Commission has caused the said city and the area two (2) miles from the corporate limits of said city to be zoned for various uses; and no area within said city or within said two (2) miles from the corporate limits of said city may be used for any purpose other than the purpose stated and fixed by said city and its Plan Commission.

9. The real estate Plaintiff proposes to appropriate and condemn is located within two (2) miles from the corporate limits of said city and is zoned solely for residential purposes; and Plaintiff has failed and refused to obtain from said city or its Plan Commission, or its Zoning Board or any other authority designated by said city, any variance from said zoning, or any other authority to use said real estate for the purpose proposed by Plaintiff."

On September 25, 1964, appellant, City of Washington, filed its petition for Leave to Intervene as a Party Defendant. Appellee filed its objections thereto. The court having heard argument thereon overruled appellee's objections, granted the petition and made the City of Washington a party defendant, to which ruling appellee excepted.

October 1, 1964, the City of Washington filed its objections to the complaint to condemn. Said objections, omitting head-

ing, formal parts and signatures, in pertinent part read as follows, to-wit:

"1.  Intervenor is a municipal corporation duly organized and existing by virtue of the laws of the State of Indiana.

2.  Pursuant to the laws of the State of Indiana, intervenor has duly created a Plan Commission and Board of Zoning Appeals in order to promote the orderly development of the governmental units of intervenor and of its environs; and pursuant to the laws of the State of Indiana and to the Ordinance of intervenor creating such Plan Commission and Board of Zoning Appeals, said Commission and Board has jurisdiction within the corporate limits of intervenor and two (2) miles from the corporate limits of intervenor.

3.  Pursuant to the laws of the State of Indiana and to the ordinances of intervenor, intervenor and its Plan Commission has caused intervenor and the area two (2) miles from the corporate limits of intervenor to be zoned for various uses; and no area within the corporate limits of intervenor or within said two (2) miles from the corporate limits of intervenor may be used for any purpose other than the purpose stated and fixed by intervenor and its Plan Commission without the permission or consent of intervenor or its Plan Commission or Board of Zoning Appeals or other authority duly constituted by intervenor.

4.  The real estate Plaintiff proposes to appropriate and condemn is located within two (2) miles from the corporate limits of intervenor and is zoned for residential purposes; and the Plaintiff has failed and refused to obtain, or to attempt to obtain, from intervenor or its Plan Commission or Board of Zoning Appeals or other authority duly constituted by intervenor, any rezoning of said real estate or any variance from said zoning or a permit for conditional use or any other authority or permission to use said real estate for the purpose proposed by Plaintiff, and, in fact, has notified the intervenor that they do not intend to make any application for such use, asserting that they are excepted from the control of the zoning ordinances of the City of Washington.

5.  The use Plaintiff proposes for said real estate and the use for which Plaintiff proposes to condemn said real estate to-wit: constructing, operating and maintaining a high voltage electric transmission line in, over and upon said real estate is under the classification of a conditional use

in the zoning ordinance of the City of Washington and as such, the right to so construct the lines as proposed by the Plaintiff is, among other things, subject to the control of the Board of Zoning Appeals of the City of Washington. The Plaintiff under the procedure set out in said ordinance, which ordinance is pursuant to the authority of the laws of the State of Indiana, is required to file application with the Board of Zoning Appeals of the City of Washington for authority to construct said line in said area, and that such authority from such Board is a condition precedent to the Plaintiff's right to exercise the power to eminent domain for the use sought.

6. Plaintiff serves no customers in Daviess County, Indiana, or within the corporate limits of intervenor or within the said two (2) mile limit; Plaintiff does not serve the real estate Plaintiff proposes to condemn; and the harm, detriment and damage to intervenor and to its residents and the residents of its environs and to said real estate may be such that the Board of Zoning appeals after their hearing would refuse to grant such use, if so the plaintiff would have a right to appeal such decision to this Court. If such decision was upheld and after the condemnation proceedings had been authorized and completed, then the plaintiff would be in a position of having acquired property that it could not use. This can be avoided by the requirement that it is a condition precedent to the right to condemn that the plaintiff first has the right to use the property for the purpose that justifies the condemnation. Failure to make such showing by the Plaintiff in this cause is grounds to abate the plaintiff's action.

7. Plaintiff proposes to appropriate and condemn the said real estate for its own private use and benefit to the detriment of intervenor and to the residents of intervenor and its environs, and without first making application to the Board of Zoning Appeals for such right. The laws of of the State of Indiana do not except the Plaintiff from the jurisdiction of the zoning ordinances of the City of Washington.

8. The appropriation and condemnation proposed by Plaintiff may be found by the Board of Zoning Appeals to violate the principal purposes under the zoning ordinances and master plan of the City of Washington, and such use will substantially and permanently injure the appropriate use of neighboring property, and will not substantially serve the public convenience and welfare and that an alternative route is available, and that if permitted will create

a vacuum in and near and adjacent to the corporate limits of intervenor to the irreparable injury and detriment ad infinitum of intervenor, its residents and its environs, and if so found, a permit to so use said property would be denied.

9. The Plaintiff may apply to the Board of Zoning Appeals for the use as requested, and the said Board may determine that such Conditional Use is consistent with the spirit, purpose and intent of the zoning ordinance of the City of Washington and with its master plan and that such use will not substantially and permanently injure the appropriate use of neighboring property and will substantially serve the public convenience and welfare, and that no alternative route is feasible. With such a finding, the Plaintiff would then be in a position to so show this Court and the objection raised by this intervenor would be satisfied.

WHEREFORE, intervenor prays that the foregoing objections be sustained; that the cause be abated until such time as the Plaintiff has complied with the zoning ordinance of the City of Washington and shows to the Court that it has the right under said ordinance to use the property for the purposes expressed, and that in the interim judgment be rendered for intervenor; that Plaintiff be ordered and directed to reimburse intervenor for its costs laid out and expended; and for all other just and proper relief in the premises."

October 3, 1964, appellee filed its demurrer to the objections filed by appellant, City of Washington. October 13, 1964, the trial court overruled appellee's demurrer to the objections of appellant City of Washington.

October 15, 1964, appellee filed motion for change of venue from Judge. October 17, 1964, appellant City of Washington filed objections to motion for change of venue. The trial court sustained objections of City of Washington and overruled appellee's motion for change of venue from Judge.

Thereafter, appellee sought and secured an alternative Writ of Mandate, later made permanent, in this Court. *State ex rel Indianapolis Power & Light Co.* v. *Daviess Circuit Court* (1965), 246 Ind. 461, 206 N. E. 2d 611. The trial court,

pursuant to such permanent writ, granted the change of venue from the Judge. May 12, 1965, the Special Judge was selected. May 13, 1965, the Special Judge qualified, took oath and assumed jurisdiction in the cause.

On May 27, 1965, the cause was submitted to the trial court, evidence presented and heard. At the trial appellee introduced Appellee's Exhibit 1, a certified copy of its articles of incorporation, which contains the following provision:

"2. The purpose or purposes for which it is organized are as follows:

A. To supply any city, town, village, community, places of amusement or exhibition, or any two or more of either of same, with water, light, heat or power.

B. To carry on the business of furnishing, supplying and vending light, heat and power and any and all business incident thereto, and to acquire, construct, maintain, own and operate plants and facilities for the manufacture, generation, accumulation, transmission and distribution of electricity and steam for light, heat and power purposes.

C. To furnish, supply, transmit, transport or distribute electrical energy to the public or to any town or city in the State of Indiana."

At the trial appellants introduced into evidence a certified copy of the ordinance of the City of Washington, Chapter 15 entitled "Improvement Location Permits," Chapter 20 entitled "Planning and Zoning," Chapter 23 entitled "Subdivision Control" and Chapter 25 entitled "Throughfare Plan."

The parties then stipulated as follows:

"Chapter 20, entitled "Planning and Zoning" of intervenor's Exhibit A admitted in evidence was in force in the City of Washington, Indiana, at the time of the filing of this action and is still in force. (Chapters 23, 25 and 15 are withdrawn from said Exhibit A.) Pursuant to the provisions of said ordinance a zoning plan was created and established by the governmental agencies of said City and is now in effect.

The real estate which plaintiff proposes to condemn herein lies within two miles of the corporate limits of said City

and within the jurisdictional area of the Board of Zoning Appeals of said City.

Under the terms of said Chapter 20, plaintiff's proposed transmission line could not be constructed across the Graham Farms' land at the location specified by the plaintiff in its complaint without the granting by the Board of Zoning Appeals of said City of a conditional use. Plaintiff has not applied for or been granted such conditional use. It is plaintiff's position that it had no duty to apply for such conditional use."

On June 24, 1965, the trial court entered its findings, judgment, ruling and order for the plaintiff, reciting therein, inter alia, "that plaintiff is entitled to and does hereby appropriate and condemn such easement and right-of-way for, and shall devote the same to, the uses hereinabove set forth, subject only to the conditions herein contained," being in conformity with the allegations in the appellee's complaint. The court appointed appraisers, who were directed to appear before the court on June 28, 1965, at 2:00 P.M. and be duly sworn as provided by law.

The appraisers took their oath. On July 12, 1965, they filed their report. Thereupon appellee excepted to the appraisers' award on the ground it was too high. At the same time appellee filed its motion for a change of venue from the county.

On July 13, 1965, appellant, Graham Farms, Inc., filed its exceptions to the appraisers' award on the ground that it was too low.

Thereafter on July 19, 1965, appellants filed their Praecipe for appeal to this court. The transcript and assignment of errors was filed in the clerk's office of this Court on September 13, 1965.

Appellants' Assignment of Errors, omitting formal parts and signatures, in pertinent part reads as follows:

"1. Findings by the trial court in favor of Appellee are not supported by the evidence.

2. Findings by the trial court in favor of Appellee are contrary to the law.

3. The judgment, ruling and order of the trial court in favor of Appellee is not supported by the evidence.

4. The judgment, ruling and order of the trial court in favor of Appellee is contrary to the law.

5. The action of the trial court in overruling objections filed by Appellant Graham is erroneous and contrary to law.

6. The action of the trial court in overruling objections filed by Appellant City is erroneous and contrary to law.

7. The action of the trial court in proceeding with the trial after overruling Appellee's demurrer to Objections Nos. 7, 8 and 9, filed by Appellant Graham is contrary to the law.

8. The action of the trial court in proceeding with the trial after overruling Appellee's demurrer to Objections filed by the Appellant City is contrary to the law.

9. The appointment of appraisers by the trial court is not supported by the evidence.

10. The appointment of appraisers by the trial court is contrary to the law.

11. The action of the trial court in sustaining Appellee's objections to Appellant Graham's questions (on cross-examination) of Appellee's witness Switzer is contrary to the law.

12. The judgment, ruling and order of the trial court in favor of Appellee denies to Appellant Graham its rights under the law and permits the condemnation of Appellant Graham's property without due process of law.

13. The action of the trial court in appointing appraisers denies to Appellant Graham its rights under the law and permits the condemnation of Appellant Graham's property without due process of law.

14. The judgment, ruling and order of the trial court in favor of Appellee denies to Appellant City its ability, right and power to enforce its Ordinances (applicable in this proceeding) duly and properly enacted according to the law.

15. The action of the trial court in appointing appraisers denies to Appellant City its ability, right and power to enforce its Ordinances (applicable in this proceeding) enacted according to the law."

In view of the importance of this case we have set out at some length the issues raised by the complaint, the objections

of Graham Farms, Inc. that survived appellee's demurrer and the objections of intervenor City of Washington.

Appellants in their brief say the issues in this cause may be grouped as follows:

"(1) Does Appellee have the right to exercise the power of eminent domain for the use sought?

(2) Does the trial court have jurisdiction of the subject matter of the complaint?

(3) May Appellee condemn land which is located within an area over which the Appellant, City of Washington, has zoning jurisdiction which it has exercised, without seeking or obtaining authority from the City or its authorized agency to use the land for a purpose violating such zoning ordinance?"

Appellee in its beief says that only one question of substance is involved herein:

"Whether, in order to meet increased demand for electricity, appellee, an Indiana public electric utility, may condemn under Acts 1929, Ch. 218, Sec. 3-1713 et seq. Burns', a transmission line easement across land within two miles of the City of Washington, Indiana, the route of which line was selected by appellee after bona fide engineering studies (and which route the undisputed evidence shows to be the most feasible and practical), without being hamstrung by a local zoning ordinance which appellants contend gives the City the right to veto appellee's selection of such route."

Appellee further says,

"The other question discussed by appellant, whether appellee was required to obtain from the Public Service Commission of Indiana a certificate of convenience, economy or necessity under Acts 1921, Ch. 98, Sec. 54-723 et seq. Burns', before condemning such easement is insubstantial because (a) the question was not before the trial court at the hearing on appellants' objections, inasmuch as appellee's demurrer to Graham's objection No. 1 (Br. p. 14) raising this point (the City's objections did not mention this point) had been sustained, and the question is not before this court inasmuch as appellants have not assigned herein the sustaining of the demurrer as error; and (b) the

question has already been decided adversely to appellants in various decisions of this court . . ."

Without going into detail, the appellants challenge the statement in appellee's brief that certain issues are not before the court and allege appellant has brought such issues here by its assigned error No. 5.

Certain utilities sought and obtained leave of this Court to file a brief Amici Curiae after the appeal herein had been filed. Such brief together with those of appellants and appellee have been given due consideration in arriving at our determination herein.

In order to keep in proper perspective the issues involved in the case at bar, we must not lose sight of the fact that this is an interlocutory appeal from an order and judgment of the Daviess Circuit Court appointing appraisers.

Appellee produced two witnesses, George Switzer and Paul Crawford. Switzer, who is Vice President in charge of Engineering and Construction for appellee and a registered engineer with experience in the electrical utility field, testified as to the need and purpose for the land in question to transmit bulk power from the power plant near Petersburg, Indiana to Marion County. He described the steps taken to determine the route and described the type of proposed transmission line, also that the route laid out was the most feasible and practical route. Crawford, Chief Transmission Engineer of L. E. Myers Company, graduated in 1934 with a Bachelor of Science degree and since that time has been active in transmission line engineering work for various electric utilities. Crawford participated in the selection of the route of the transmission line in this case and is of the opinion the selected route is the most feasible and practical.

We now address the legal questions arising from the factual situation developed in this action. Actions in condemnation in this state now proceed under and by virtue of Acts 1905, ch. 48, being § 3-1701 et seq. Burns', or some Act amend-

atory thereof. What shall constitute the necessary allegations of the complaint is specifically declared in Acts 1905, ch. 48, § 2, p. 59; 1935, ch. 76, § 1, p. 228, being § 3-1702 Burns'.

Appellee herein was incorporated by Articles dated October 26, 1926, and filed in the office of the Secretary of State of the State of Indiana on October 27, 1926.

On November 19, 1931, appellee reorganized and filed articles of reorganization in the office of the Secretary of State of the State of Indiana on November 23, 1931. Such articles, in part, read as follows:

"ARTICLES OF REORGANIZATION
OF
INDIANAPOLIS POWER & LIGHT COMPANY

The above named corporation, desiring to accept the provisions of 'The Indiana General Corporation Act' approved March 16, 1929, Chapter 215 of the Acts of the Indiana General Assembly of 1929, and desiring to reorganize pursuant to the provisions of said Act, the same having first been duly approved by its Board of Directors and thereafter duly adopted, by affirmative votes of two-thirds or more of all the outstanding shares entitled to vote in respect thereof, as provided by law does now hereby, by C. L. Harrod, its President and Elmer E. Scott, its Secretary sign, acknowledge and verify by the oath of the above mentioned officers the following, its

ARTICLES OF REORGANIZATION

(1) The exact name of this corporation is Indianapolis Power & Light Company.
. . . ."

The Indiana General Assembly passed an act in 1929 "authorizing certain corporations to appropriate and condemn lands and easements in lands." Acts 1929, ch. 218, being § 3-1713 et seq. Burns'. Section 1 of the statute provides:

"Any corporation organized under the law of the State of Indiana, authorized by its articles of incorporation to furnish, supply, transmit, transport or distribute electrical energy, gas, oil, petroleum, water, heat, steam, hydraulic

power or communications by telegraph or telephone to the public or to any town or city, or to construct, maintain or operate turnpikes, toll bridges, canals, public landings, wharves, ferries, dams, aqueducts, street railways or interurban railways for the use of the public or for the use of any town or city, is hereby authorized and empowered to take, acquire, condemn and appropriate land, real estate or any interest therein, for carrying out such purposes and objects together with all accommodations, rights and privileges deemed necessary to accomplish the use for which the property is taken, including the right to construct railroad siding, switch or industrial tracks connecting its plant or plants or facilities with the tracks of any common carrier."

Section 2 of the 1929 statute, being § 3-1714 Burns' gives the condemnors the right to take the amount of land "it deems necessary for its proper uses and purposes, except that for rights of way, the condemnor shall take, acquire, condemn and appropriate an easement."

Section 3 of the 1929 statute, being § 3-1715 Burns', reads as follows:

"The appropriation and condemnation of lands and easements in lands herein authorized shall be made under and pursuant to the terms and conditions of and in the manner prescribed by an act of the general assembly of the State of Indiana, entitled 'An act concerning proceedings in the exercise of eminent domain,' approved February 27, 1905, and all acts amendatory thereof."

We are inclined to agree with appellee that appellants' contention that appellee was required to obtain from the Public Service Commission of Indiana a certificate of convenience, economy or necessity under Acts 1921, ch. 98, being § 54-723 et seq. Burns' and particularly § 54-724 Burns', before condemning such easement is insubstantial. We fail to see how the appellee is affected by § 54-723 et seq., *supra*. In the first place, § 54-723 provides in part:

"The appropriation and condemnation of lands and easements in lands herein authorized shall be had and done in

all respects under and pursuant to the terms and conditions and in the manner prescribed by an act of the general assembly of the state of Indiana entitled, 'An act concerning proceedings in the exercise of eminent domain,' approved February 27, 1905."

Section 2 of the 1921 statute, being § 54-724 Burns', reads as follows:

"No such public utility shall be authorized to appropriate and condemn lands or easement in lands under and by virtue of this act without first securing from the public service commission of Indiana, a declaration, after a public hearing of all parties interested, that public convenience, economy or necessity require such appropriation and condemnation. Upon receiving from the public service commission such declaration of public convenience, economy or necessity, any such public utility shall be fully authorized and empowered to appropriate and condemn lands or easements in lands for any of the purposes named in this act. Any such hearing and the proceedings in reference thereto shall be as provided by the Shively-Spencer Public Utility Act and the rules and regulations of the commission."

Section 3 of the 1921 statute, being § 54-725, reads as follows:

"This act shall be construed as supplemental legislation and not as repealing any laws now in force."

As the act in question by its very terms relates back to and provides for procedure in conformity to Acts 1905, ch. 48, it is understandable that the legislature did not want to repeal that act. Neither could it bind the hands of future general assemblies. We agree that any of the public utilities named in the act could proceed under the terms thereof, *if they possessed no other power to exercise the right of eminent, and desired to,* so long as they followed the procedure established by the eminent domain act of 1905.

As we have previously pointed out, § 3-1713, *supra,* permits any corporation qualified thereunder, and appellee by the nature of its articles of incorporation and its business is so

qualified, to exercise the right of eminent domain, *without first obtaining from the Public Service Commission of Indiana* the certificate required under § 54-724 Burns', *supra*. Therefore there can be no question as to the jurisdiction of this Court over the subject matter of the action.

Appellee has contended throughout this litigation that it is acting under and by virtue of the 1929 Act. The content of the complaint indicates such fact. Nothing in the record indicates otherwise. Thus, by statute and by precedent appellee was and is lawfully proceeding. *Reuter* v. *Milan Water Co., Inc.* (1935), 209 Ind. 240, 198 N. E. 442.

Appellant's, Graham Farms, Inc., objections Nos. 7, 8 and 9 and appellant's, City of Washington, objections 1 to 9 inclusive all deal with the Acts 1947, ch. 174, being § 53-701 et seq. Burns', which is an enabling act permitting the creation by ordinance of plan commissions to promote orderly growth of the community.

Intervenor City of Washington has such an ordinance. The parties stipulated that such ordinance was in force at the time of the filing of appellee's complaint to condemn right of way.

It is the contention of the appellants that the Act of 1947, ch. 174, gives authority to the municipalities operating thereunder to create a plan commission to prepare a master plan for the efficient and economic development of public ways, places, structures and *utilities*. They also claim such act authorizes the master plan to include *locations*, extent and character of *public and private utilities*. In brief, it is appellants' contention that appellee "is required to file application with the Board of Zoning Appeals of the City of Washington for authority to construct said line in said area, and that such authority from such Board is a condition precedent to the Plaintiff's right to exercise the power of eminent domain for the use sought."

The first two paragraphs of § 53-701, *supra*, read as follows:

"Each city council, each town board of trustees and each board of county commissioners in the state may by ordinance create a plan commission in order to promote the orderly development of its governmental units and its environs. *It is the object of this legislation to encourage local units of government to improve the present health, safety, convenience, and welfare of their citizens and to plan for the future development of their communities* to the end that highway systems be carefully planned, that new community centers grow only with adequate highway, utility, educational, and recreational facilities; that the needs of agriculture, industry and business be recognized in future growth; that residential areas provide healthy surroundings for family life; and that the growth of the community is commensurate with and promotive of the efficient and economical use of public funds.

In accomplishing this objective, it is the intent of this legislation that the plan commission shall serve in an advisory capacity to presently established boards and officials, and in addition, *that certain regulatory powers be created over developments affecting the public welfare and not now otherwise controlled,* and that additional powers be granted legislative bodies of cities, towns and counties to carry out the purposes of this act [§§ 53-701 — 53-795]." (Emphasis supplied.)

Section 93 of the 1947 statute, being § 53-794 Burns', declares that:

"The provisions of this act [§§ 53-701 — 53-795] are supplemental to and do not abrogate the powers extended to agencies, bureaus, departments, commissions, divisions or officials of the state government by other state statute and these powers shall remain in full force and effect. Powers of supervision and regulation by such divisions of the state government over city, town, county, township and other local governmental units, individuals, firms or corporations also are not abrogated and shall continue in full effect."

The question of powers of other agencies of state government becomes important from the standpoint of (1) the regulatory powers of the Public Service Commission and (2) the powers of a public utility acting as an agency of the state in its exercise of the right of eminent domain.

The 1947 statute does not specifically provide, and it cannot be assumed that the legislature would authorize, a municipality or a county to regulate a public utility when the utility is serving the larger interest in the general public. The utility is regulated by the Public Service Commission, and local regulation is inimical to that larger interest.

It was to relieve public utilities from the burden of local regulation that the legislature created the Public Service Commission. *City of Huntington* v. *Northern Indiana Power Co.* (1937), 211 Ind. 502, 5 N. E. 2d 889, 6 N. E. 2d 335.

When local regulation attempts to control an activity in which the whole state or a large segment thereof is interested, local regulation must fall.

The Public Service Commission Act provides:

"Every public utility is required to furnish reasonably adequate service and facilities. . . ." Acts 1913, ch. 76, § 7, p. 167; 1933, ch. 190, § 2, p. 928, being § 54-201 Burns'.

"The commission . . . shall have the power, and it shall be its duty, to enforce the provisions of this act, as well as *all other laws, relating to utilities*." (Emphasis supplied.) Acts 1913, ch. 76 § 124, p. 167, being § 54-714 Burns'.

The commission would be powerless to order improved service if local zoning regulations are allowed to override the powers of the commission.

All powers previously given to the prior Public Service Commission by the Shively-Spencer Act, Acts 1913, ch. 76, p. 167, are conferred on the present Public Service Commission by Acts 1941, ch. 101, § 12, p. 255, being § 54-119 Burns'. This Court has held that the Shively-Spencer Act vested in the commission (as then constituted) all powers over public utilities theretofore vested in municipalities, except certain powers (not here applicable) expressly reserved to the municipalities. *City of Vincennes* v. *Vincennes Traction Co.* (1918), 187 Ind. 498, 120 N. E. 27.

Appellants take the position that if no certificate of convenience and necessity is required from the Public Service Commission, then a regulatory gap exists in the powers of the commission as respects the location of public utility facilities. From appellants' reasoning it would follow that regulation by local zoning authorities would not conflict with any effective power of the commission. Such is not the case, for no such gap exists. The Public Service Commission Act sets up adequate machinery for control by the commission of all improper acts of public utilities.

> "Upon a complaint made against any public utility . . . that any . . . act whatsoever affecting or relating to the service of any public utility or any service in connection therewith, is in any respect unreasonable, unsafe, insufficient or unjustly discriminatory . . . the commission shall proceed, with or without notice, to make such investigation as it may deem necessary or convenient. But no order affecting said . . . act, complained of, shall be entered by the commission without a formal public hearing." Acts 1913, ch. 76, § 57, p. 184, being § 54-408 Burns'.

It is apparent that the commission would have jurisdiction under this statutory provision of a proper complaint relating to the location of utility facilities.

To adopt the position of appellants in the case at bar would mean that the 1947 Legislature intended by implication wholesale repeal and amendment of the eminent domain acts of Indiana. In view of the chaos that would result we are certain that was neither the act nor intent of the Legislature. We find no merit or authority for appellants' position in the Act.

Having given careful, even extended consideration to the issues presented on appeal, we find no reversible error below. The allegations of the complaint were found to be true. The court entered its proper judgment in condemnation, appointed appraisers to assess the damages the appellant will sustain by reason of such appropriation. The appraisers appeared,

518

took their oath, proceeded to discharge their duties and filed their report, to which appellants and appellee excepted.

The judgment is affirmed.

Lewis, C. J. and Hunter and Mote, JJ. concur. Arterburn, J. concurs in result.

NOTE.—Reported in 233 N. E. 2d 656.