IN RE PETITION OF JOHN ALABACH ET AL. *v.* NORTHERN
INDIANA PUBLIC SERVICE COMPANY.

[No. 2-1273A274. Filed June 16, 1975. Rehearing denied July 28, 1975.
Transfer denied March 8, 1976.]

472

*Harris & Welsh,* of Chesterton, for appellants.

*Joseph T. Morrow, David C. Jensen, Schroer, Eichhorn & Morrow,* of Hammond, for appellee.

## CASE SUMMARY

BUCHANAN, J.—Petitioners-appellants (Landowners) seek review of an Order of the Public Service Commission (Commission) dismissing their petition objecting to a proposed right of way for Appellee Northern Indiana Public Service Company (NIPSCO), claiming that the Commission has subject matter jurisdiction to determine the reasonableness of a proposed electric transmission right of way.

## FACTS

The undisputed facts are:

On February 22, 1973, the Landowners filed their "Petition to Restrict Location of Right of Way for Electrical Transmission Line to Existing Corridors of Utility Easements" objecting to NIPSCO's proposed right of way for an electrical transmission line, because it unreasonably divided the landowners' property. The petition further alleged that better routes were available nearby, that the proposed location is unreasonable and unnecessary and should be relocated by the

Commission, or at least the Commission should investigate the necessity and reasonableness of the proposed easement.

On March 24, 1973, NIPSCO, an Indiana corporation organized as a public utility to supply electrical energy and natural gas to the public, filed its motion to dismiss the Petition asserting that the Commission does not have subject matter jurisdiction over a public utility such as NIPSCO in the exercise of its power of eminent domain.

The Landowners responded to NIPSCO's motion to dismiss by pointing to IC 1971, 8-1-2-54 (Burns Code Ed.) (the general complaint statute) as the source of the Commission's authority over location of transmission lines.

The Commission then entered an order granting NIPSCO's motion to dismiss for lack of subject matter jurisdiction observing that if the Commission could alter the location of condemnations its action would be in conflict with the legislative intent of IC 1971, 32-11-3-1, -2 (Burns Code Ed.) (the condemnation statute)[1] allowing public utilities, such as NIPSCO, to exercise the power of eminent domain.

## ISSUE

Does the Public Service Commission have authority by virtue of the general complaint statute to order NIPSCO to relocate its proposed transmission lines?

The Landowners contend that the general complaint statute of the Public Service Commission Act of 1913, IC 1971, 8-1-2-1, *et seq.*, gives the Commission the power to determine and investigate the reasonableness of proposed locations for public utility rights of way.

NIPSCO asserts that the condemnation statute and supporting case authority authorizes public utilities such as NIPSCO to freely exercise the power of eminent domain without seeking the prior approval of the Commission.

1. Certain public utilities are specifically prohibited from exercising the power of eminent domain by IC 1971, 8-1-8-1, *et seq.* (Burns Code Ed.) *See Lowe* v. *Ind. Hydroelectric Co.* (1926), 197 Ind. 430, 151 N.E. 220; *Graham Farms, Inc.* v. *Indianapolis Power & Light Co.* (1968), 249 Ind. 498, 233 N.E.2d 656.

## DECISION

CONCLUSION—It is our opinion that the general complaint statute does not authorize the Public Service Commission to order NIPSCO to relocate its proposed transmission lines.

Landowners have long sought to whittle away at a public utility's discretion in locating rights of way . . . unsuccessfully so far.

Beginning with *Lowe* v. *Ind. Hydroelectric Co.* (1926), 197 Ind. 430, 151 N.E. 220, an Indiana landowner sought to limit condemnation by requiring a public utility to obtain a certificate of public convenience and necessity from the Commission before undertaking condemnation . . . and lost.

*Lowe* was followed by *Reuter* v. *Milan Water Co., Inc.* (1935), 209 Ind. 240, 198 N.E. 442; *Guerrettaz* v. *Public Service Co. of Indiana* (1949), 227 Ind. 556, 87 N.E.2d 721; *Dahl* v. *Northern Ind. Public Service Co.* (1959), 239 Ind. 405, 157 N.E.2d 194; *Graham Farms, Inc.* v. *Indianapolis Power & Light Co.* (1968), 249 Ind. 498, 233 N.E.2d 656,[2] all of which firmly and specifically established the principle that a utility such as NIPSCO need *not* obtain prior Commission approval or a certificate of public convenience and necessity before exercising its power of condemnation.

Illustrative of unerring judicial devotion to this rule is *Graham Farms, Inc.*:

> "As we have previously pointed out, § 3-1713, *supra,* [32-11-3-1, -2 (the condemnation statute)] permits any corporation qualified thereunder, . . . to exercise the right of eminent domain, *without first* obtaining from the Public Service Commission of Indiana the certificate required under § 54-724, Burns, *supra* [8-1-8-1, *et seq.*]" (Emphasis not ours.)

249 Ind. at 513-514.

2. *Also see, Jensen* v. *Ind. and Michigan Co.* (1972), 257 Ind. 599, 277 N.E.2d 589; *J. M. Foster Co., Inc.* v. *Northern Indiana Public Service Co., Inc.* (1975), 164 Ind. App. 72, 326 N.E.2d 584. (*Reuter* v. *Milan Water Co., Inc., supra,* was overruled by *Joint County Park Bd.* v. *Stegemoller* (1950), 228 Ind. 103, 120, 89 N.E.2d 720, 721, on grounds having no effect upon our decision.)

Even more apropos to the precise question before us is the court's statement in *Guerrettaz:*

"We find nothing in the law requiring the condemnor in the proceeding to pursue a route of direct line from the starting point to its terminal without deviation. *The right to make reasonable or necessary deviations in the route selected belongs to the condemnor* under the statute, § 3-1714 *supra* [IC 32-11-3-2, pertaining to appropriations of property for easements]. If in making such deviations lands are required that would not be if the line ran straight from the point of beginning to the point of termination, such land is subject to condemnation.

*The condemnor was not compelled to take the shortest route* between the starting point and terminal of the line's proposed route. Many things may intervene, which from a public utility standpoint, the standpoint of public safety, and public convenience, make deviations necessary.

The width of the strip of real estate to be taken, is a practical question, and to some extent depends upon what the condemnor deems necessary for the uses and purposes of its business." (Emphasis supplied.)

227 Ind. at 561-562.

These cases form a phalanx of strength over which Landowners seek to propel themselves by using the general complaint statute as a fulcrum. It was enacted in 1913 and provides:

"*IC 8-1-2-54. Complaints—Investigations and Hearing.* Upon a complaint made against any public utility by any merchantile, agricultural or manufacturing society or by any body, politic or municipal organization or by 10 persons, firms, corporations or associations or 10 complaints of all or any of the aforementioned classes or by any public utility that any of the rates, tolls, charges or schedules or any joint rate or rates in which such petitioner is directly interested are in any respect unreasonable or unjustly discriminatory or that any regulation, measurement, practice or act whatsoever affecting or relating to the *service* of any public utility or any service in connection therewith is in any respect unreasonable, unsafe, insufficient or unjustly discriminatory or that any service is inadequate or cannot be obtained the Commission shall proceed with or without notice such investigation as it may deem necessary or convenient, but no order affecting said rates, tolls,

charges, schedules, regulations, measurements, practice or act complained of shall be entered by the Commission without a formal public hearing." [Acts 1913, ch. 76, § 56, p. 167.] (Emphasis supplied.) (General complaint statute)

The term "service" as used in the Act is defined in IC 1971, 8-1-2-1:

> "The term 'service' is used in this Act in broadest and most inclusive sense and includes not only the use or accommodation afforded consumers or patrons but also any product or commodity furnished by any public or other utility in the plant, equipment, apparatus, appliances, *property* and facility employed by any public or other utility in performing any service or in furnishing any product or commodity and devoted to the purposes in which such public or other utilities engaged and to the use and accommodation of the public." (Emphasis supplied.)

The thrust of the general complaint statute is to afford certain persons a remedy against public utilities arising out of their operations *after* they are providing service. It is silent as to any remedy arising out of the acquisition of property and location of rights of way. The references to "service" and "property" by context are limited to operating public utilities. Landowners can take no solace from these references.

It appears to be in keeping with the general condemnation statute which endows certain corporations (including NIPSCO) with the power of eminent domain. This power emanates from the Eminent Domain Act first enacted in 1905:

> "Any corporation organized under the law of the State of Indiana, authorized by its Articles of Incorporation to furnish, supply, transmit, transport or distribute electrical energy, . . . to the public or to any town or city, . . . is hereby authorized and empowered to *take, acquire, condemn and appropriate land,* real estate, or any interest therein, for carrying out such purposes and objects *together with all accommodations, rights, and privileges deemed necessary to accomplish the use for which the property is taken. . . ."* (Emphasis supplied.)

IC 32-11-3-1.

> "The condemnor may *take, acquire, condemn and appropriate* a fee simple estate, title and interest *in such quantity*

*or amount of land as it deems necessary for its proper uses and purposes,* except that for rights-of-way, the condemnor shall take, acquire, condemn and appropriate an easement." (Emphasis supplied.)

IC 32-11-3-2. (The general condemnation statute.)

The general complaint statute, being part of the Public Service Commission Act of 1913, IC 1971, 8-1-2-1, *et seq.,* (Burns Code Ed.), and the condemnation statute must be construed in pari materia, giving effect to each if possible.[3]

We find these two statutes in no way inconsistent. There is a strong presumption that the Legislature in enacting a particular piece of legislation is aware of existing statutes on the same subject. *Morgan County R.E.M. Corp.* v. *Indianapolis P. & L. Co.* (1973), 261 Ind. 323, 302 N.E.2d 776, 778; *Abrams* v. *Legbandt* (1974), 160 Ind. App. 379, 312 N.E.2d 113, 119. Also, the condemnation statute is a specific statute authorizing certain public utilities to "take, acquire, condemn and appropriate land" in "such quantity or amount of land as it deems necessary. . . ." Obviously, a broad grant of a discretionary right. As NIPSCO's brief puts it,

"[O]ne of the attributes of the right to exercise the power of eminent domain is the discretion vested in the condemnor to determine the route and location of transmission line facilities. *Guerrattaz* v. *Public Service Co. of Indiana, supra.*"

Landowners go beyond statutory interpretation and further rely on stray language in *Graham Farms:*

"It is apparent that the commission would have jurisdiction under this statutory provision of a proper complaint relating to the location of utility facilities."

249 Ind. at 517, 233 N.E.2d at 667.

3. NIPSCO's power of eminent domain is authorized and derived from the legislative enactment of 1905:

"*32-11-3-3 [3-1715]. Application of sections 32-11-1-1—32-11-1-13.* —The appropriation and condemnation of lands and easements in lands herein authorized shall be made under and pursuant to the terms and conditions of and in the manner prescribed by an act of the general assembly of the state of Indiana, entitled, 'An act concerning proceedings in the exercise of eminent domain,' approved February 27, 1905, and all acts amendatory thereof" [Acts 1929, ch. 218, § 3, p. 800.]

*See Graham Farms, Inc.* v. *Indianapolis P. & L. Co.* (1968), 249 Ind. 498, 513-514, 233 N.E.2d 656.

This statement would appear to be obiter dicta because the Court in so stating had just clearly emphasized that certain public utilities could exercise their right of domain "without first obtaining from the Public Service Commission of Indiana the certificate required under § 54-724, Burns, supra". The utility in *Graham Farms, Inc.* had sought to condemn an easement across a portion of the landowner's property, and the landowner had objected because the utility did not possess a certificate of convenience and necessity. Also the City of Washington, Indiana, had intervened asserting that it had in effect a zoning ordinance which would be violated if the utility condemned the property and erected the proposed transmission line. The court specifically followed *Reuter* v. *Milan Water Co., Inc., supra*, and in view of the repeated statements of the Indiana Supreme Court that prior approval of the Commission is not required, we cannot interpret this dicta as overruling prior specific cases broadly interpreting the condemnation statute.

The Indiana Supreme Court had previously said in *Dahl* v. *Northern Indiana Public Service Company, supra*, that

> "The statute [IC 32-11-3-1] vests discretion in the appellee, utility, herein, to take or appropriate property for public use, and if in its judgment the property herein sought to be appropriated was necessary to distribute electric energy to the public, appellee had the right to condemn, and its judgment therein cannot be questioned, or superseded by the courts *except for fraud, capriciousness or illegality.*" (Emphasis supplied.)

239 Ind. at 411, 157 N.E.2d 198.

Thus a remedy for "fraud, capriciousness or illegality" has been recognized and in the absence of a specific holding negating the unequivocal provisions of the eminent domain statute we cannot conclude that the inadvertent language in *Graham Farms* is anything more than a recognition of a landowner's remedy for fraud, capriciousness or illegality.

The essence of the relief sought by Landowners in this case is substantially the same as that denied the landowner in *Graham Farms, Inc.* If Landowner's Petition is granted,

NIPSCO would be required to secure approval of the Commission before acquiring land for a right of way justifying its choice of location of route of the proposed transmission line to the Commission. By such circumlocution NIPSCO would be forced to seek prior Commission approval as though it had filed for a certificate of public convenience and necessity, the very requirement it has been exempted from doing by the specific terms of the eminent domain statute and the cases construing it and related statutes.

So we find the unrelated terms of the general complaint statute and the dicta in *Graham Farms, Inc.* too weak a base for a successful assault on the distinct and powerful wording of the condemnation statute and the cases construing it.

The judgment of the trial court is affirmed.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 329 N.E.2d 645.