HERMAN DARLAGE, BUILDING COMMISSIONER OF BARTHOLOMEW COUNTY, INDIANA *v.* EASTERN BARTHOLOMEW WATER CORPORATION

[No. 1-378A69. Filed September 5, 1978. Rehearing denied October 2, 1978. Transfer denied February 28, 1979.]

*Bruce R. Runnels*, of Columbus, for appellant.

*Robert L. Dalmbert, Dalmbert & Marshall*, of Columbus, for appellee; *Jon D. Noland, Daniel W. McGill, Barnes, Hickam, Pantzer & Boyd*, for *amici curiae* Indianapolis Power & Light Co., Public Service Company of Indiana, Inc., Northern Indiana Public Service Company and Southern Indiana Gas & Electric Company; *Marcus E. Woods*, of Indianapolis, for *amicus curiae* Indianapolis Power & Light Company; *Frank T. Lewis*, of Plainfield, for *amicus curiae* Public Service Company of Indiana, Inc.; *Frederick F. Eichhorn, Jr., Eichhorn, Morrow & Eichhorn*, of Hammond, for *amicus curiae* Northern Indiana Public Service Company; *Frederick P. Bamberger, Bamberger, Foreman, Oswald & Hahn*, of Evansville, for *amicus curiae* Southern Indiana Gas & Electric Company.

ROBERTSON, J.—This interlocutory appeal from an order of the Bartholomew Circuit Court granting appellee-plaintiff Eastern Bartholomew Water Corporation's request for temporary injunction and denying appellant-defendant County Building Commissioner Darlage's motion to dismiss for lack of subject matter jurisdiction raises this central issue:

Whether or not a utility is subject to the jurisdiction and regula-

tion of county zoning and building authorities with respect to the location and use of utility facilities located within the county.

We affirm.

A summary of the facts shows that Eastern Bartholomew Water Corporation (Utility) is a public utility authorized by its articles of incorporation to operate as a public rural water system. Pursuant to IC 32-11-3-1 — 2, the Utility has the power of eminent domain to carry out such purpose. In 1972, the Utility applied to the Bartholomew County Board of Zoning Appeals for a conditional use permit to use certain land located in the County for a well site treatment plant, office building and storage tank, such permit being approved subject to compliance by the Utility with certain conditions. The Utility later petitioned the Indiana Public Service Commission (PSC) for authorization to extend its water distribution system, etc., which, including plans and specifications for the well fields, were approved by the PSC. The Utility subsequently exercised an option to purchase the property.

The County Board of Zoning Appeals later attached a condition to approval of the project that the real estate be platted as required by the County subdivision ordinance; a request filed by the Utility with the County Plan Commission for approval of a minor plat was later denied.

Construction of the project proceeded absent issuance of a building permit by the County Building Commissioner for construction on the real estate. Thereafter, a stop work order was posted at the well site by the Building Commissioner. The Utility then filed an action to enjoin the Building Commissioner from interfering with the Utility's development and construction on the real estate. The trial court granted the injunction, and this appeal followed.

In its conclusions of law that the Utility was not subject to the local regulations since the Utility is regulated by the PSC and has the power of eminent domain, the trial court relied directly upon the case of *Graham Farms, Inc. v. Indianapolis Power and Light Co.* (1968), 249 Ind. 498, 233 N.E.2d 656. The Building Commissioner, to the contrary, contends that he should be permitted to enforce compliance by the Utility with local zoning and subdivision control or-

dinances, and urges that *Graham Farms*, when considered with *Alabach v. Northern Indiana Public Service Co.* (1975), 164 Ind.App. 471, 329 N.E.2d 645, supports his position. We are more persuaded, however, by the arguments offered by the Utility and *amici* with respect to these cases, and we hold that the trial court ruled properly.

In *Graham Farms*, the plaintiff-appellee electric utility complained for the condemnation of an easement and right of way for an electric transmission line. The real estate sought to be appropriated and condemned was within two miles of the city limits of the City of Washington, Indiana; the City, claiming zoning jurisdiction because of the location of the land, intervened in the action. A town ordinance provision required the granting of a conditional use for the purposes sought by the electric transmission company. However, the utility neither applied for nor was granted a conditional use.

The Indiana Supreme Court, squarely faced with the question of whether the utility could condemn land without being subject to the city zoning ordinance, in part, wrote:

> The 1947 statute [§ 53-794, Burns, now IC 18-7-5-98[1]] does not specifically provide, and it cannot be assumed that the Legislature would authorize, a municipality or a county to regulate a public utility when the utility is serving the larger interest of the general public. The utility is regulated by the Public Service Commission, and local regulation is inimical to that larger interest.

> It was to relieve public utilities from the burden of local regulation that the legislature created the Public Service Commission. *City of Huntington v. Northern Indiana Power Co.* (1937), 211 Ind. 502, 5 N.E.2d 889, 6 N.E.2d 335.

> When local regulation attempts to control an activity in which

---

1. IC 18-7-5-98 relates to the supplemental effect of Acts 1947, c. 174 [§ 53-701 *et seq.*, Burns, now IC 18-7-5-1 *et seq.*], enabling legislation permitting creation by ordinance of local plan commissions. *Graham Farms, supra,* 249 Ind. at 514, 233 N.E.2d at 665. See the discussion by the *Graham Farms* court resolving the apparent conflict of local regulation powers vested by the Act and state utility regulatory power vested in the PSC.

In this case, Bartholomew County Ordinance 1-1 (1958), the "Zoning Ordinance," was enacted pursuant to Acts 1947, c. 174; section 22 of the ordinance established a Board of Zoning Appeals within has the power and duty, among others, to hear and decide conditional uses.

the whole state or a large segment thereof is interested, local regulation must fall.

The Public Service Commission Act provides:

'Every public utility is required to furnish reasonably adequate service and facilities. * * *' Acts 1913, ch. 76, § 7, p. 167; 1933, ch. 190, § 2, p. 928, being § 54-201 Burns [now IC 8-1-2-4].

'The commission * * * shall have the power, and it shall be its duty, to enforce the provisions of this act, as well as *all other laws*, relating to utilities.' (Emphasis supplied.) Acts 1913, ch. 76, § 124, p. 167, being § 54-714 Burns [now IC 8-1-2-115].

The commission would be powerless to order improved service if local zoning regulations are allowed to override the powers of the commission.

In *Graham Farms*, the court also held that it was not necessary for a utility, condemning land pursuant to IC 32-11-3-1, to obtain a certificate of convenience, economy, or necessity from the PSC prior to initiating condemnation proceedings. In response to the argument that there was a "regulatory gap" insofar as condemnation was neither subject to the PSC nor local zoning, the court states that "the commission would have jurisdiction under this statutory provision [IC 8-1-2-54] of a proper complaint relating to the location of utility facilities." 244 Ind. at 517, 233 N.E.2d at 667.

The Building Commissioner urges a narrow application of *Graham Farms*. He submits that one of the premises relied on by the Supreme Court in its *Graham Farms* holding—that the PSC could, pursuant to IC 8-1-2-54,[2] assume jurisdiction of a complaint for relief by persons and municipalities relating to location of utility facility — was determined to be invalid in the subsequent *Alabach* case. In *Alabach*, landowners petitioned the PSC, relying on IC 8-1-2-54 and *Graham Farms*, objecting to the location of proposed electric transmission lines. The PSC dismissed for want of subject matter jurisdiction, deferring to the util-

---

2.   "Upon a complaint made against any public utility ... that any ... act whatsoever affecting or relating to the service of any public utility or any service in connection therewith, is in any respect unreasonable, unsafe, insufficient or unjustly discriminatory ... the commission shall proceed, with or without notice, to make such investigation as it may deem necessary or convenient. But no order affecting said ... act, complained of, shall be entered by the commission without a formal public hearing."

ity's right of eminent domain. The Third District of our court affirmed. The Building Commissioner, however, points to the following portions of the *Alabach* opinion as relevant to his position here:

> The thrust of the general complaint statute is to afford certain persons a remedy against public utilities arising out of their operations *after* they are providing service. It is silent as to any remedy arising out of the acquisition of property and location of rights of way. [Original emphasis].

164 Ind.App. at 476, 329 N.E.2d at 648. and

> This statement[3] would appear to be *obiter dicta* because the Court in so stating had just clearly emphasized that certain public utilities could exercise their right of domain 'without first obtaining from the Public Service Commission of Indiana the certificate required under § 54-724, Burns, [now IC 8-1-8-2] *supra*'.

164 Ind.App. at 478, 329 N.E.2d at 649.

The Building Commissioner maintains in view of *Alabach* that there exists a "regulatory gap." He argues that if the PSC "does not have jurisdiction over acquisition and location of a utility's facilities, then such utilities can exercise their rights in this respect unfettered and without restraint [and that the] regulatory gap can be filled by recognizing that local zoning and building authorities have jurisdiction to enforce the provisions of applicable ordinances as respects the location of utility facilities."

We disagree with the Building Commissioner's contentions, and we hold that the principles of *Graham Farms*, as set forth, *supra*, are controlling. First, we do not believe that *Alabach* creates a regulatory gap. *Alabach*, as we view that case in relation to the present case, examines the language of the *Graham Farms* decision regarding IC 8-1-2-54 and concludes that the PSC's authority was limited to complaints against utilities after the utilities are providing service — and does not purport to open the door to local zoning regulation otherwise. Secondly, even if a regulatory gap arguably would be

---

3. The *Alabach* court adverts to this language from the *Graham Farms* decision: "It is apparent that the commission would have jurisdiction under this statutory provision of a proper complaint relating to the location of utility facilities." 249 Ind. at 517, 233 N.E.2d at 667.

said to exist, any empowering of local regulation must be by our Legislature and not the courts. As for now, we follow the statement by the *Graham Farms* court that the PSC has jurisdiction over complaints relating to location of utility facilities. 249 Ind. at 517, 233 N.E.2d at 667.

With regard to the regulatory gap argument, we make two other observations. It is settled law that a public utility's exercise of eminent domain power is subject to judicial review and can be challenged as arbitrary, capricious, and fraudulent. *Ellis v. Public Service Company of Indiana* (1976), 168 Ind.App. 269, 342 N.E.2d 921, 924. In addition, the PSC approved and authorized the Utility's project prior to action taken by the Building Commissioner.

The Building Commissioner has raised three additional and secondary issues for our review. He first asserts that the Utility had available adequate administrative remedies by which to test decisions adverse to the Utility, and, therefore, the trial court lacked jurisdiction over the subject matter. In view of our holding in the first issue that the Utility was not subject to the local zoning and building authorities with respect to the location and use of utility facilities within the County, we need not address this exhaustion of remedies argument.

He secondly avers that the trial court made no findings with respect to the existence or potential for irreparable injury or damage to the Utility, and, thus, the trial court's order granting temporary injunction was contrary to law. Again, considering the legal basis for the trial court's ruling, we think any omission of such a finding was harmless.

The Building Commissioner finally argues that two of the trial court's special findings were not supported by the evidence. We cannot say, however, that the findings are clearly erroneous, Ind. Rules of Procedure, Trial Rule 52(A); therefore, this issue presents no error.

Having found no error, we affirm the judgment below.

Affirmed.

Lybrook, P.J. and Lowdermilk, J., concur.

NOTE—Reported at 379 N.E.2d 1018.