**TOWN OF SCHERERVILLE,**
**Plaintiff-Appellant,**

v.

**NORTHERN INDIANA PUBLIC SERVICE CO., Defendant-Appellee.**

**No. 3–583A130.**

Court of Appeals of Indiana,
Third District.

May 30, 1984.

Nick J. Anast, Gary, for plaintiff-appellant.

William H. Eichhorn, Paul A. Rake, Eichhorn, Eichhorn & Link, Hammond, for defendant-appellee.

GARRARD, Judge.

On October 29, 1982 the Town of Schererville filed a complaint seeking a preliminary and a permanent injunction to enjoin as unsafe Northern Indiana Public Service Company's (NIPSCO) installation of overhead electric transmission wires.[1] The town had not previously filed a complaint with the Public Service Commission (PSC) regarding this dispute. NIPSCO filed a motion to dismiss. The court, after oral argument and review of the record, found that it lacked subject matter jurisdiction to entertain the complaint due to the town's failure to exhaust its non-judicial remedies with the PSC. Accordingly, the court granted NIPSCO's motion to dismiss. Upon the court's denial of the motion to correct errors, the town brings this appeal. The town alleges that the court's ruling was contrary to law in that the court had subject matter jurisdiction to consider its complaint for an injunction.[2]

The town asserts that the PSC lacked jurisdiction of this dispute. The PSC may hear complaints regarding "service" under IC 8-1-2-54,[3] but the town maintains that

1. The town passed an ordinance in 1973 requiring all future installation or extension of electrical transmission service or increase in load potential to be subterranean. Ordinance No. 569, Town of Schererville, Indiana. NIPSCO had completed installation by the end of October, 1982.

2. Because of our disposition of this case we need not address the town's claim that its ordinance is valid. However, we note for the benefit of counsel that had we reached this issue it would have been waived under Indiana Rules of Procedure, Trial Rule 59(D)(2) for failure to claim error in specific terms and to include

with the motion to correct errors a statement of the facts and grounds upon which the errors are based. The motion to correct errors asserts only that the trial court had jurisdiction to consider the complaint and the motion was not accompanied by any memorandum.

3. "IC 8-1-2-54 Complaints against utilities; hearing

Sec. 54. Upon a complaint made against any public utility by any mercantile, agricultural or manufacturing society or by any body politic or municipal organization or by ten (10) persons, firms, corporations or associations, or ten (10)

*Alabach v. NIPSCO* (1975), 164 Ind.App. 471, 329 N.E.2d 645 limits the term "service" as used in the statute to operating public utilities. Therefore, since the issue here relates to the installation of transmission wires prior to service, the PSC lacks jurisdiction to hear the complaint. If the PSC lacks jurisdiction, the state court has jurisdiction.

The issues in *Alabach v. NIPSCO, supra,* were whether the PSC had jurisdiction to order NIPSCO to relocate proposed transmission wires and whether NIPSCO could obtain property under the power of eminent domain without seeking prior approval from the PSC. The court held that the PSC was without jurisdiction because the legislature clearly intended to allow utilities to use eminent domain without seeking prior PSC approval. Private parties could not use the general complaint statute to permit them to thwart legislative intent. In so holding the court noted that use of the terms "service" and "property" in the general complaint statute, IC 8–1–2–54, did not allow an end run for private parties because, in the context of the stat-

ute and the circumstances there, those terms were limited to operating public utilities.[4]

*Alabach* may be distinguished from the case here: We are not concerned with a utility obtaining property from a private party who seeks a remedy from the PSC not contemplated by the legislature. Here the town seeks to object to NIPSCO's *manner and method* of providing service on property previously acquired by the utility without resort to eminent domain.

■■■ The dispute concerns the *furnishing* of a product and the manner of installing the *equipment* necessary to do so. This issue, therefore, is included in the definition of "service" in IC 8–1–2–1.[5] Consequently, the PSC had subject matter jurisdiction of this dispute under IC 8–1–2–54.

In addition the town asserts that under IC 18–7–5–95[6] a town may sue for an injunction in state court to enforce a zoning ordinance. While no injunction is allowed where an adequate and complete remedy exists at law, *Indiana & Michigan Electric Co. v. Southern Wells School Build-*

---

complainants of all or any of the aforementioned classes, or by any public utility, that any of the rates, tolls, charges or schedules or any joint rate or rates in which such petitioner is directly interested are in any respect unreasonable or unjustly discriminatory, or that any regulation, measurement, practice or act whatsoever affecting or relating to the service of any public utility, or any service in connection therewith, is in any respect unreasonable, unsafe, insufficient or unjustly discriminatory, or that any service is inadequate or can not be obtained, the commission shall proceed, with or without notice, to make such investigation as it may deem necessary or convenient. But no order affecting said rates, tolls, charges, schedules, regulations, measurements, practice or act, complained of, shall be entered by the commission without a formal public hearing."

4. In addition, the court in *Darlage v. Eastern Batholomew Water Corp.* (1978), 177 Ind.App. 425, 379 N.E.2d 1018 stated that *Alabach's* conclusion that the PSC's authority was limited to complaints regarding service already provided did not by implication open the door to local zoning regulation.

5. "The term '*service*' is used in this act in its broadest and most inclusive sense and includes not only the use or accommodation afforded

customers or patrons but also any product or commodity furnished by any public or other utility and the plant, *equipment,* apparatus, appliances, property and facility employed by any public or other utility in performing any service or *in furnishing any product* or commodity and devoted to the purposes in which such public or other utility is engaged and to the use and accommodation of the public." (emphasis added)

6. "IC 18–7–5–95   Injunctive relief

Sec. 95. The plan commission, the board of zoning appeals or any designated enforcement official may institute a suit for injunction in the circuit court of the county to restrain an individual or a governmental unit from violating the provisions of this act or of an ordinance enacted pursuant to its terms. The plan commission or the board of zoning appeals may also institute a suit for a mandatory injunction directing an individual or a governmental unit to remove a structure erected in violation of the provisions of this act or of an ordinance enacted pursuant to its terms. If the plan commission or the board of zoning appeals is successful in its suit, the respondent shall bear the costs of the action.

A change of venue from the county shall not be granted in such a case."

*ing Corp.* (1972), 258 Ind. 75, 279 N.E.2d 228, the town maintains that the only remedies available from the PSC include fines and money damages. IC 8–1–2–107, –109, –115. The town claims that its only adequate and complete remedy is the removal and burial of the overhead wires. Since the PSC is incapable of granting an injunction, the town maintains that it was excused from filing a complaint with the PSC prior to seeking relief in the state court.

■ A court does not have subject matter jurisdiction merely because it has power to provide remedies that administrative agencies cannot provide. *Indiana Bell Telephone Co. v. Friedland* (1978), 175 Ind.App. 622, 373 N.E.2d 344. Nevertheless, if the town had filed its complaint with the PSC and the PSC had determined that NIPSCO's act of installing overhead wires was unsafe, it could have ordered NIPSCO to remove them and install them underground as just acts, practices or service to be furnished in the future under IC 8–1–2–69.[7] Further, if enforcement of this order had been required, the PSC could have sought a mandatory or a prohibitory injunction under IC 4–22–1–27.[8]

Finally, the town maintains that even if the PSC had jurisdiction, a preliminary injunction was available in state court to aid an administrative agency. Consequently, it asserts the trial court had jurisdiction to determine whether a preliminary injunction could issue.

In *Decatur County R.E.M.C. v. Public Service Co.* (1971), 150 Ind.App. 193, 275

N.E.2d 857 the court decided whether a trial court had subject matter jurisdiction to grant a permanent injunction before the parties sought a remedy with the Public Service Commission. The court followed the general rule in determining that it did not have jurisdiction. However, the court noted an exception to the general rule:

"While we hold that the trial court did not have jurisdiction of the subject matter to invoke permanent equity in this case, it is a general rule in most jurisdictions, including this one, that courts may impose *temporary* equity in aid of an administrative agency's jurisdiction to assist the agency in preserving the status quo, or to promote the public interest, until the administrative question has been determined. (See 73 C.J.S. Public Administrative Bodies and Procedure Section 45, p. 362, and *Southern Indiana Gas and Elec. Co. v. Indiana Statewide Rural Elec. Coop., Inc.* (1968), 251 Ind. 459, 242 N.E.2d 361.) The action in such cases, however, is to protect, rather than defeat, the jurisdiction of the particular agency. (See *Domanick v. Triboro Coach Corp.* (1940), 259 App.Div. 657, 20 N.Y.S.2d 306.) Accordingly, if the trial court is presented with an emergency situation, it may then enter a temporary order, but it may not invoke permanent equity when the legislature has provided a statutory remedy consisting of an administrative agency created for the express purpose of regulating and control-

---

7. "8–1–2–69 Complaints against utilities; orders of commission

Sec. 69. Whenever, upon the investigation made under the provisions of this act, the commission shall find any regulations, measurements, practices, acts or service to be unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory or otherwise in violation of any of the provisions of this act; or shall find that any service is inadequate or that any service which can be reasonably demanded can not be obtained, the commission shall determine and declare and by order fix just and reasonable measurements, regulations, acts, practices or service to be furnished, imposed, observed and followed in the future in lieu of those found to be

unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory, inadequate, or otherwise in violation of this act, as the case may be, and shall make such other order respecting such measurement, regulation, act, practice or service as shall be just and reasonable." (emphasis added)

8. "4–22–1–27 Equitable actions

Sec. 27. Any agency may bring a proceeding in equity against any person against whom a final order or determination has been made to compel compliance therewith, and the court or judge thereof in vacation in such action shall have jurisdiction to enforce such order or determination by prohibitory or mandatory injunction."

ling service by public utilities." (emphasis in original)

275 N.E.2d at 862.

Here, the trial court could have had subject matter jurisdiction to consider issuing a preliminary injunction to assist the administrative agency in preserving the status quo while the parties sought a decision on the merits from the PSC. *Decatur County, supra.* Status quo has been defined as the "last, actual, peaceful and noncontested status which preceded the pending controversy." *Rees v. Panhandle Eastern Pipe Line Co.* (1978), 176 Ind.App. 597, 377 N.E.2d 640. The status quo in this case would have been the situation prior to the installation of overhead wires. However, since the town did not seek to enjoin NIPSCO prior to completion of the project nor did it pursue its remedy from the PSC prior to filing the complaint for a preliminary injunction, the trial court lacked jurisdiction to consider the matter.

The trial court did not err in granting NIPSCO's motion to dismiss.

Affirmed.

YOUNG, J. (sitting by designation), concurs;

SULLIVAN, J. (sitting by designation), concurs in Result.