**NORTHERN INDIANA PUBLIC
SERVICE COMPANY,
Appellant–Defendant,**

v.

**Alex DOZIER, Appellee–Plaintiff.**

No. 71A03–9601–CV–9.

Court of Appeals of Indiana.

Dec. 20, 1996.

Paul A. Rake, Robert J. Feldt, David J. Beach, Eichhorn & Eichhorn, Hammond, for Appellant–Defendant.

Thomas L. Schaffer, Notre Dame Legal Aid Clinic, South Bend, for Appellee–Plaintiff.

Dawn M. Dawkins, Legal Services of Northwest Indiana, Inc., Gary, for Amicus Curiae.

## OPINION

GARRARD, Judge.

Northern Indiana Public Service Company ("NIPSCO") brings this interlocutory appeal from the trial court's order granting a preliminary injunction to Alan Dozier ("Dozier") which in effect denied NIPSCO's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.

### FACTS AND PROCEDURAL HISTORY

In April of 1989, NIPSCO terminated residential gas service to Dozier's South Bend residence for non-payment. In July of 1995, Dozier applied for or inquired about receiving residential natural gas at a different address in South Bend. A representative of NIPSCO's South Bend office denied him service or dissuaded him from applying for service because he had a prior outstanding bill.[1]

---

1. The actual manner in which Dozier was denied service is unclear. Dozier indicated in his com- plaint that he "applied to agents of … [NIPSCO] for gas service" and that NIPSCO "refused to

Dozier failed to file a complaint or an objection with NIPSCO or the Indiana Utility Regulatory Commission ("IURC").

On October 24, 1995, Dozier filed a verified complaint alleging that NIPSCO denied him gas service, that any debt owed by him to NIPSCO was barred by all applicable statutes of limitation, that the denial of gas service was unlawful, and that because Dozier and his family depended on gas service to heat and cook, the continued denial of gas service would cause irreparable harm to the health and welfare of his family. Dozier requested a preliminary injunction ordering NIPSCO to provide gas service immediately and a permanent injunction ordering NIPSCO not to refuse or disconnect gas service. Additionally, Dozier filed a motion for preliminary injunction and an affidavit of poverty indicating he was unable to pay filing costs or give security by way of deposit. The trial court approved commencement of the action without filing fees, advance costs or security by way of deposit.

The chronological case summary indicates that both parties were present by counsel on October 26, 1995 at which time the trial court set a hearing for November 3, 1995 on Dozier's application for temporary injunction. On November 3, 1995, a conference call was held with counsel at which time Dozier moved for a continuance which was granted by agreement. The chronological case summary indicated that the "parties will endeavor to submit this matter on an agreed statement." (R. 2).

On November 14, 1995, NIPSCO filed a motion asking the trial court to deny Dozier's motion for preliminary injunction and moved to dismiss Dozier's claim for lack of subject matter jurisdiction and failure to state a claim pursuant to Ind.Trial Rule 12(B)(1) and 12(B)(6). NIPSCO contended that it was entitled to a dismissal due to Dozier's failure to first submit his complaint to the IURC as required by Ind.Admin.Code title 170, r. 5–1–17 and filed a supporting memorandum. On the same day, Dozier filed an affidavit in support of his motion for preliminary injunction. On November 15, 1995, Dozier filed a memorandum in support of said motion. On November 21, 1995, Dozier filed a supplementary memorandum and a letter stipulating to certain facts. The letter was not signed by NIPSCO's counsel but indicated that "Mr. Rake [NIPSCO's counsel] and I [Dozier's counsel] have agreed" to stipulate that NIPSCO was a regulated utility subject to Indiana law, that NIPSCO held an outstanding utility bill against Dozier, and that if Dozier were to submit an application for gas service, it would be denied due to his outstanding bill. (R. 52).

On December 1, 1995, without a hearing on the matter, the trial court issued a preliminary injunction which contained the following:

This matter having been submitted for the Court's determination, upon a stipulation and upon affidavit of the plaintiff and the Court having received and considered the party's competing memoranda, this Court does now find that the plaintiff's old debt to the defendant from April, 1989 is time-barred by the applicable Indiana statute of limitations.

The Court further finds that irreparable harm will result to the plaintiff if he is without gas utility service and thus without heat through the winter months in South Bend, Indiana. It is accordingly ordered and decreed that the defendant provide gas utility service to the plaintiff without requiring the plaintiff to pay or give security for payment of the former account from 1989.

(R. 53).

NIPSCO appealed. Dozier failed to file a timely appellee brief and his petition for an extension was denied. On August 1, 1996,

connect its gas lines to [his] [h]ome." (R. 4). NIPSCO, in its memorandum to the trial court, indicated that it denied service because Dozier was not creditworthy. However, the stipulation of facts submitted to the trial court by Dozier indicated that "[i]f Alex Dozier *were to submit an application* for utility service, his application *would be denied* by NIPSCO on the basis that he has an outstanding utility bill for services rendered." (R. 52) (emphasis added). Additionally, appellant indicated in its brief that Dozier "was dissuaded from applying for service because he had a prior outstanding bill which would have to be paid first." (Appellant Brief, p. 5, citing R. 52).

this court granted Legal Services of Northwest Indiana's motion for leave to file amicus curiae brief which was timely filed on August 12, 1996.

## ISSUES

NIPSCO presents four issues on appeal. We restate and address two issues which we find dispositive.

I. Whether the trial court had subject matter jurisdiction to address Dozier's complaint that he was improperly denied utility service when Dozier failed to exhaust his administrative remedies.

II. Whether the trial court improperly issued a preliminary injunction in finding that Dozier had proven irreparable harm.

We reverse and remand with instructions.

## DISCUSSION AND DECISION

■ We note at the onset that since appellee Dozier failed to file a timely brief, if NIPSCO shows prima·facie error, we may reverse the trial court's ruling. *Kirk v. Monroe County Tire*, 585 N.E.2d 1366, 1368 (Ind.Ct.App.1992). This rule relieves this court from the burden of controverting the arguments advanced for a reversal where such a burden rests with the appellee. *Olive v. Olive*, 650 N.E.2d 766, 767 (Ind.Ct.App. 1995).

## ISSUE I

■ In Indiana, if the Administrative Adjudication Act[2] requires a party to exhaust its administrative remedies before obtaining judicial review, a court has no subject matter jurisdiction to hear the case. *Austin Lakes Joint Venture v. Avon Utilities*, 648 N.E.2d 641 (Ind.1995); IND.CODE § 4–21.5–5–4. In *Austin Lakes Joint Venture*, our supreme court examined the administrative law doctrines of "exhaustion of remedies" and "primary jurisdiction" and their effect on a trial court's subject matter jurisdiction over complaints involving issues arguably within the jurisdiction of administrative or regulatory agencies.

Even when neither statute nor agency rule specifically mandates exhaustion as a prerequisite to judicial review, the general rule is that a party is not entitled to judicial relief for an alleged or threatened injury until the prescribed administrative remedy has been exhausted. [citation omitted]. . . .

> The exhaustion doctrine is intended to defer judicial review until controversies have been channeled through the complete administrative process. The exhaustion requirement serves to avoid collateral, dilatory action of the likes of the instant action and to ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review. It provides an agency with an opportunity "to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975).

*Uniroyal, Inc. v. Marshall*, 579 F.2d 1060, 1064 (7th Cir.1978).

. . .

The doctrine of primary jurisdiction is an invention of the United States Supreme Court to deal with the problem that arises when the courts and an agency both have claims to jurisdiction of an issue in a case that has come before a court. [citation omitted]. One of the best summaries of the doctrine of true primary jurisdiction [footnote omitted] has come from the Seventh Circuit:

> The doctrine [of primary jurisdiction] comes into play when a claim is cognizable in a court but adjudication of the claim "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of [an] administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views."

---

**2.** The IURC is one of the agencies exempted from the application of the Administrative Adjudica-

tion Act. IND.CODE § 4–21.5–2–4.

*United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

No fixed formula exists for applying the doctrine of primary jurisdiction, but "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). [footnote omitted]

*Hansen v. Norfolk & Western Ry. Co.,* 689 F.2d 707, 710 (7th Cir.1982).

The doctrines of primary jurisdiction and exhaustion of remedies, therefore, are related but *significantly* different. The doctrine of primary jurisdiction is not, in our view, jurisdictional but prudential; the doctrine of exhaustion of remedies, on the other hand, is jurisdictional and, where applicable, makes a Trial Rule 12(B)(1) motion for lack of jurisdiction over the subject matter appropriate. [footnote omitted]

*Austin Lakes Joint Venture,* 648 N.E.2d at 644–45.

Earlier this year, our supreme court revisited *Austin Lakes Joint Venture* and provided a summary of its direction to trial courts in applying the doctrines.

When a court's subject matter jurisdiction is contested on grounds of "exhaustion of remedies," "primary jurisdiction," or similar arguments alleging that the issues presented are within the exclusive jurisdiction of regulatory or administrative agencies to resolve, the court must examine each issue or claim in the case to see if any falls within the jurisdiction of the trial court. *Austin Lakes Joint Venture,* 648 N.E.2d at 646. If all of the issues or claims are clearly matters for exclusive administrative or regulatory agency determination, the court is without subject matter jurisdiction and must dismiss the complaint. Conversely, where at least one of the issues or claims is within the jurisdiction of the trial court, the entire case falls within its jurisdiction. *Id.* In order to determine wheth-

er any, all, or some of the issues or claims in this case are matters for exclusive IDEM [Indiana Department of Environmental Management] determination, we proceed to set forth (A) the issues or claims presented by the landowners and (B) the regulatory scheme implicated thereby.

*Town Board of Orland v. Greenfield Mills, Inc.,* 663 N.E.2d 523, 525 (Ind.1996).

■ Therefore, since Dozier's complaint is challenged on the grounds of exhaustion of remedies or primary jurisdiction, we examine issues or claims presented in Dozier's complaint and direct our attention to the applicable regulatory scheme to determine whether the case was properly before the trial court.

Dozier contended in his complaint, and NIPSCO conceded, that the reason Dozier was refused service was his unpaid account which was more than 6 years delinquent. Dozier argues that any liability for his prior unpaid gas service was barred by all applicable statutes of limitation. However, the issue was not whether NIPSCO could bring an action to require Dozier to pay his outstanding bill. The issue before the trial court was whether NIPSCO improperly withheld gas service to Dozier pursuant to the applicable Indiana statute and administrative code. The fact that NIPSCO withheld service based on Dozier's unwillingness or inability to pay his outstanding bill from a previous service would clearly have been a relevant fact. However, whether or not the applicable statute or administrative regulations properly allow an outstanding bill, regardless of its judicial enforceability, to be considered in determining a customer's creditworthiness is the issue.

In considering the issue of whether NIPSCO improperly denied service to Dozier, we must first examine the applicable statutes and administrative rules.

■ NIPSCO is a public utility subject to regulation by the IURC (formerly known as the Public Service Commission) pursuant to the Public Service Commission Act of 1913, as amended. IND.CODE § 8–1–2–1 *et seq.* The IURC derives its power solely from the legislature and has no power to act unless

such power is conferred by statute. *South Eastern Ind. Natural Gas v. Ingram,* 617 N.E.2d 943, 947 (Ind.Ct.App.1993). The legislature provided for the IURC to promulgate administrative rules to perform its lawfully imposed duties. IND.CODE § 8–1–1–3. The IURC is *required* to establish rules and regulations to govern the relations between public utilities and their customers and "[t]hose rules and regulations shall cover the following subjects: (1) extension of service; ... (3) deposits, including interest thereon; ... (6) complaints;...." IND.CODE § 8–1–2–34.5.

Title 170, Article 5 of the Indiana Administrative Code sets forth rules and procedures which govern NIPSCO as a public utility. Specifically, 170 IAC 5–1–15 provides for the evaluation of the creditworthiness of a customer[3] and for any deposit that may be required.[4] A procedure for customer complaints is provided in 170 IAC 5–1–17(A):

> (1) A customer may complain at any time to a utility about any bill which is not delinquent at that time, security deposit, disconnection notice, *or any other matter relating to its service* and may request a conference thereon. Such complaints may be made in person, in writing, or by completing a form available from either the Commission or from the utility at its business offices.
>
> ....
>
> (2) Upon receiving each such complaint or request for conference, the utility:
>
> > (a) shall promptly, thoroughly and completely investigate such complaint, confer with the customer when requested and notify, in writing, the customer of the results of its proposed disposition of

the complaint after having made a good faith attempt to resolve the complaint.

> > (b) such written notification shall advise the customer that he may, within (7) days following the date in which such notification is mailed, request a review of such proposed disposition by the Commission.

(emphasis added)

■ Amicus appears to argue that because Dozier has a delinquent account the rule precludes him from seeking relief. We disagree. Dozier is not contesting the bill. He is challenging the utility's refusal to grant his application for service.

■ Pursuant to 170 IAC 5–1–17, Dozier could have made a complaint directly to NIPSCO alleging that NIPSCO improperly denied him service by requiring that he first pay his outstanding bill in full.[5] If Dozier was dissatisfied with NIPSCO's response, he could have requested that the IURC informally review the disputed issue.

> (B) Review. (1) If the customer is dissatisfied with the utility's proposed disposition ..., he may request the Commission in writing within seven (7) days following the date in which such notification is mailed, to informally review the disputed issue and the utility's proposed disposition thereof.

170 IAC 5–1–17(B). Further, upon receiving such a request, the Commission must provide an informal review within 21 days, consisting of a "prompt and thorough investigation of the dispute" and a written decision must be mailed to the customer within 30 days of the customer's request. *Id.*

In addition to the complaint procedure provided in the administrative rules, IND. CODE § 8–1–2–54 empowers the IURC to

---

**3.** The use of the term "customer" in 170 IAC 5–1–15 and 170 IAC 5–1–17 applies only to residential services. 170 IAC 5–1–1(b).

**4.** We need not restate 170 IAC 5–1–15, the section of the administrative code regarding the manner in which new applicants are deemed creditworthy. Given our holding that the decision regarding the creditworthiness of a new applicant is within the exclusive province of the administrative agency, it is sufficient that agency regulations exist to govern the manner in which utilities make these decisions.

**5.** Dozier may argue that he has already made his complaint as 170 IAC 5–1–17 provides that a complaint may be made in person, in writing, or by completing a form available from the IURC or the utility. Even if Dozier has made his complaint pursuant to 170 IAC 5–1–17, it is clear from the record that Dozier did not seek to have the IURC informally review his complaint nor did he submit a formal complaint to IURC pursuant to IND.CODE § 8–1–2–54.

investigate a complaint made against any public utility, including a complaint that "any service is inadequate or *can not be obtained,* . . . ." (Emphasis added). This court has held that the language of the statute does not preclude the IURC from investigating a complaint made by an individual utility customer.[6] The IURC also has the authority to enforce the provisions of the act. IND. CODE § 8–1–2–115. Therefore, in addition to the avenue provided by 170 IAC 5–1–17, Dozier could have pursued a complaint with the IURC against NIPSCO pursuant to Ind. Code § 8–1–2–54. He failed to do so.

Although the facts in *Austin Lakes Joint Venture* make it distinguishable from the case at bar, the distinctions provide further guidance. In *Austin Lakes Joint Venture*, a subdivision developer received assurances from the president of a utility that the utility would be able to provide sewer service to the entire 101 acres of the subdivision. The utility continued to assure the developer and indicated that the utility was in good standing and in compliance with applicable agency regulations. However, the utility had been cited, criticized, and fined by the Indiana Department of Environmental Management (IDEM). IDEM refused developer's hookups due to the utility's discharge of raw sewage and its agreement to provide the developer with service beyond its capacity. Rather than appealing IDEM's denial, the developer brought an action against the utility for breach of contract, fraud, promissory estoppel, and specific performance.

On petition to transfer, our supreme court held that the trial court had subject matter jurisdiction over the action. The court noted that "[e]xhaustion of remedies appears as an issue most frequently in cases challenging the reasonableness or validity of agency decisions or actions. In those cases, the agency involved usually claims that the party challenging its action has not exhausted the appeal process within the agency." *Austin Lakes Joint Venture,* 648 N.E.2d at 644, 645. The court then observed that the case was "not a challenge to an agency regulation or action. Rather it is a lawsuit for breach of contract and fraud between two private parties." *Id.* at 645.

In contrast, a customer complaint questioning whether a utility has acted reasonably or within the confines of the promulgated rules is the very type of challenge that the legislature contemplated in authorizing the IURC to establish rules and regulations to govern the relations between public utilities and their customers. IND.CODE § 8–1–2–34.5 (specifically providing for rules and regulations to cover service, deposits and complaints). If a customer complaint regarding the services of a public utility cannot first be handled within an administrative framework, the administrative process would be superfluous. Given the legislative provisions, this court cannot support the trial court's exercise of jurisdiction where Dozier's only interaction with the either NIPSCO or the IURC was the initial denial of service by NIPSCO.

Following the guidelines set forth in *Austin Lakes Joint Venture,* we find that, based

---

6. IND.CODE § 8–1–2–54 provides for a complaint to be made by "any mercantile, agricultural or manufacturing society or by any body politic or municipal organization or by ten (10) persons, firms, corporation or associations, or ten (10) complainants of all or any of the aforementioned classes, or by any public utility, . . . ." In *Indiana Forge & Machine Co., Inc. v. Northern Indiana Pub. Serv. Co.,* 396 N.E.2d 910 (Ind.Ct.App. 1979), we examined the adequacy of the protection afforded to an individual utility customer by IND.CODE § 8–1–2–54. In examining a Kentucky case based on a statute identical to IND.CODE § 8–1–2–54, we noted that:

The [Kentucky] court pointed out that by setting a minimum number of individuals or entities necessary to file a complaint, the legislature had reduced the opportunity for frivolous complaints . . . . [T]he court commented that if

the objected to rate or service affected a significant number of customers, there should be little difficulty in one aggrieved individual finding the requisite number to join in a complaint. The *Smith* opinion [footnote omitted] also pointed out that even if an aggrieved individual could not find others to join, nothing precluded the Commission from considering an individual complaint because another statute permitted the Commission to hear complaints on its own motion. Indiana has a similar statute, IC 8–1–2–58. Thus we cannot say that Forge was precluded from utilizing the statutory procedure to challenge the curtailment regulation. . . .

Thus, Forge has not established it was without access to the Commission.

*Id.* at 914.

upon the regulatory scheme implicated, the issue of whether NIPSCO improperly denied Dozier's request for utility service was a matter for exclusive IURC determination.

However, finding that one issue is within the exclusive jurisdiction of the IURC is not enough to deny the trial court subject matter jurisdiction.

> *Austin Lakes Joint Venture* makes clear . . . that a trial court is not required to dismiss an action for lack of subject matter jurisdiction merely because a single issue or claim is within the exclusive jurisdiction of an administrative body. In fact, *Austin Lakes Joint Venture* holds just the opposite: If at least one of the issues involved in the case is within the jurisdiction of the trial court, the entire case falls within its jurisdiction, even if one or more of the issues are clearly matters for exclusive administrative or regulatory determination. *Austin Lakes Joint Venture,* 648 N.E.2d at 646.

*Town Board of Orland,* 663 N.E.2d at 527. If Dozier's request for a preliminary injunction results in a claim that is within the jurisdiction of the trial court, the entire case would still fall within the subject matter jurisdiction of the trial court.

In *Town Board of Orland,* our supreme court, in light of *Austin Lakes Joint Venture,* examined a complaint seeking to enjoin a sewage treatment facility construction project. The Town of Orland had completed preliminary work in contemplating construction of a municipal sewage treatment facility, including a feasibility study, several public hearings, various informal meetings, applications for permits and arrangements for financing. Landowners abutting the river, where the discharge that accompanies treatment would take place, filed suit to enjoin the town from constructing the proposed system. The town moved to dismiss for, *inter alia,* a failure to exhaust administrative remedies by invoking the primary jurisdiction doctrine. The trial court preliminarily enjoined the planning, construction, and permitting of the project. Our supreme court granted transfer and vacated the preliminary injunction. Justice Sullivan, who also authored the *Austin Lakes Joint Venture* opinion, indicated that

"[s]everal aspects of the landowners' complaint are noteworthy. First, the relief [the landowners] seek is exclusively injunctive; there is no claim for monetary damages. Second, the injunctive relief [the landowners] seek is prospective; no damage is alleged to be occurring currently." *Town Board of Orland,* 663 N.E.2d at 525. The court noted that the permitting statute made clear that both the construction and subsequent operation of the project were contingent upon receipt of appropriate permits from the IDEM. Additionally, there existed a statutory procedure to address complaints.

> Any person aggrieved by the permit decision may, subject to the terms and conditions imposed by the statute, appeal the decision to the Water Pollution Control Board [footnote omitted] and request that the board hold an adjudicatory hearing concerning the determination. Ind.Code 13–7–10–2.5(c)(2) (1993). Any request for an adjudicatory hearing which is properly submitted and establishes the jurisdictional basis for a hearing must be granted. Ind.Code § 13–7–10–2.5(e) (1993). *The Board may stay the force and effect of any contested permit provision and any permit term or condition the board considers inseverable from a contested permit provision. Id.* Any such adjudicatory hearing is subject to the terms and conditions of the Indiana Administrative Orders and Procedures Act, Ind.Code §§ 4–21.5–1–1 to 4–21.5–7–8 (1993 & 1995 Supp.).

*Town Board of Orland,* 663 N.E.2d at 526 (emphasis added). The court concluded that the trial court had no jurisdiction to entertain the landowners' request for a preliminary injunction.

> [T]he state water pollution control and facilities permitting statute (i) prohibits construction and operation of the sewage treatment project (ii) until the town demonstrates to IDEM [footnote omitted] that the discharge from the project will comply with state water pollution standards. Thus it appears that the statute here gives IDEM authority over precisely that which landowners seek and, if so, divests the trial

court of subject matter jurisdiction over landowners' complaint.

*Id.* at 527.

In contrast, in the case at bar, the injunctive relief sought by Dozier was not prospective; Dozier was alleging an ongoing harm in that he was without gas service. Additionally, Dozier did not seek exclusively injunctive relief; he also sought monetary damages. Unlike the statutory provisions in *Town Board of Orland,* the statutory or administrative regulations in the case at bar do not provide Dozier with an opportunity to stay the force and effects of NIPSCO's decision during the course of pursuing administrative remedies, *i.e.,* he would remain without power. Although 170 IAC 5–1–17(C) provides for the *continuation* of service for a *current customer* pending the disposition of a complaint, there are no provisions within 170 IAC 5–1–17(C) which would allow for a grant of service to a new customer pending the disposition of his complaint under any circumstances.

This court's holding in *Town of Schererville v. Northern Indiana Public Service, Co.,* 463 N.E.2d 1134 (Ind.Ct.App.1984), gives further guidance. The town of Schererville, without filing a complaint with the Public Service Commission, brought an action against NIPSCO seeking a preliminary injunction and a permanent injunction to enjoin as unsafe the installation of overhead electric transmission wires. We affirmed the trial court's order granting the utility's motion to dismiss for lack of subject matter jurisdiction, noting that "[a] court does not have subject matter jurisdiction merely because it has the power to provide remedies that administrative agencies cannot provide." *Id.* at 1137 (citing *Indiana Bell Telephone Co. v. Friedland* 175 Ind.App. 622, 373 N.E.2d 344 (1978)). We found that the trial court had no subject matter jurisdiction to issue a preliminary injunction, noting that the town had waited until after the utility had installed above ground power lines before filing a complaint. However, in response to the town's argument that a preliminary injunction was available in a trial court even if the Public Service Commission had jurisdiction, we noted that:

In *Decatur County R.E.M.C. v. Public Service Co.* (1971), 150 Ind.App. 193, 275 N.E.2d 857 the court decided whether a trial court had subject matter jurisdiction to grant a permanent injunction before the parties sought a remedy with Public Service Commission. The court followed the general rule in determining that it did not have jurisdiction. However, the court noted an exception to the general rule:

"While we hold that the trial court did not have jurisdiction of the subject matter to invoke permanent equity in this case, it is a general rule in most jurisdictions, including this one, that courts may impose *temporary* equity in aid of an administrative agency's jurisdiction to assist the agency in preserving the status quo, or to promote the public interest, until the administrative question has been determined. [citations omitted]. The action in such cases, however, is to protect, rather than defeat, the jurisdiction of the particular agency. [citation omitted]. Accordingly, if the trial court is presented with an emergency situation, it may then enter a temporary order, but it may not invoke permanent equity when the legislature has provided a statutory remedy consisting of an administrative agency created for the express purpose of regulating and controlling service by public utilities." (emphasis in original).

275 N.E.2d at 862.

Here, the trial court could have had subject matter jurisdiction to consider issuing a preliminary injunction to assist the administrative agency in preserving the status quo while the parties sought a decision on the merits from the PSC. *Decatur County, supra.* Status quo has been defined as the "last, actual, peaceful and noncontested status which preceded the pending controversy." *Rees v. Panhandle Eastern Pipe Line Co.* (1978), 176 Ind.App. 597, 377 N.E.2d 640.

*Town of Schererville,* 463 N.E.2d at 1137–38.

Although Dozier does not seek to preserve the status quo, we are persuaded by the logic of *Town of Schererville* and find it applicable to the case at bar. Unlike

*Town Board of Orland,* customer complaints regarding the denial of service cannot be resolved prior to the harm. Although the time frame for resolving customer complaints for lack of service is fairly expedient, there are narrow circumstances in which equity may require a quicker response from the trial court. When a utility customer can potentially suffer irreparable injury while he waits for the administrative process to run its course, the public interest is better served in holding that the trial court has subject matter jurisdiction to grant temporary, emergency relief. Given that the statutes or administrative regulations do not provide for a temporary relief from the IURC, allowing a new utility customer, in the proper circumstances, to seek temporary equity from the court will "protect, rather than defeat, the jurisdiction of the particular agency." *Decatur County R.E.M.C. v. Public Service Co.,* 150 Ind.App. 193, 275 N.E.2d 857 (1971). The trial court had subject matter jurisdiction to consider granting a preliminary injunction.[7]

     In concluding that the trial court had subject matter jurisdiction to entertain Dozier's claim for a preliminary injunction, the entire case falls within the jurisdiction of the trial court, even though we have determined that the issue of whether NIPSCO improperly denied service to Dozier is a matter within IURC jurisdiction. *Austin Lakes Joint Venture,* 648 N.E.2d at 646. Having found the trial court had subject matter jurisdiction over the case, we turn to the question of whether to invoke the doctrine of primary jurisdiction. Our supreme court again offered guidance in *Austin Lakes Joint Venture.*

> Once a trial court has determined that it has subject matter jurisdiction, it must review the issues in the case claimed to be matters within the purview of an administrative or regulatory agency to determine whether the doctrine of primary jurisdiction should be invoked, *i.e.,* whether the court, while retaining jurisdiction over the case, should refer an issue or some subset of issues in the case to the expert agency for its opinion or final decision. [citation omitted].
>
> . . . .
>
> Certainly a trial court *must invoke* the doctrine of primary jurisdiction where one (but less than all) of the issues in the case requires exhaustion of remedies before judicial review can occur. . . . Those issues must be referred to the agency for determination.

*Austin Lakes Joint Venture,* 648 N.E.2d at 646–647 (emphasis added).[8]

     Although the trial court had subject matter jurisdiction over the entire case, the issue of whether NIPSCO improperly denied service to Dozier requires exhaustion of remedies and must be referred to the IURC for determination. The manner of referral in such cases was addressed by our supreme court.

---

**7.** Despite our holding that the trial court had subject matter jurisdiction, a preliminary injunction remains "an extraordinary remedy to be granted in rare instances and may be issued, upon balancing the consequent hardships, only where an irreparable injury cannot be redressed by a final judgment on the merits". *Fumo v. Medical Group of Michigan City, Inc.,* 590 N.E.2d 1103, 1107 (Ind.Ct.App.1992), *reh'g denied, trans. denied.* In applying this holding to future cases, trial courts should be mindful that "a preliminary injunction be carefully worded to avoid overbreadth or ambiguity." *Franke v. Honeywell, Inc.,* 516 N.E.2d 1090, 1092 (Ind.Ct.App. 1987), *trans. denied.* A preliminary injunction should be limited to a reasonable time frame in allowing the customer, with due diligence, to pursue his administrative remedies. Preliminary injunctions are designed to protect the property and rights of parties from any injury until the issues and equities in a case can be determined after a full examination and hearing. *Laux v. Chopin Land Associates, Inc.,* 615 N.E.2d 902, 905 (Ind.Ct.App.1993), *reh'g denied, trans. denied.*

**8.** The court noted that in determining whether to invoke the doctrine of primary jurisdiction, there were three different fact patterns: 1) where one, but less than all, of the issues in the case required exhaustion of remedies (requires referral to the agency for determination), 2) where there is no issue that the agency has legal authority to decide (no referral to the agency as there is nothing to refer), and 3) where an issue in the case can be decided by either the trial court or by the administrative or regulatory agency. *Austin Lakes Joint Venture,* 648 N.E.2d at 647. Given our holding that the issue of whether NIPSCO improperly denied service required an exhaustion of remedies, we need not discuss the remaining fact patterns.

While we hold below that the doctrine of primary jurisdiction is not applicable in this case, we make several observations on the subject of "referral" in cases where the doctrine of primary jurisdiction is properly invoked. The United States Supreme Court recently said, in effect, that referral is a misnomer and that what is required is for the plaintiff to take the issue formally before the appropriate agency. *Reiter v. Cooper*, 507 U.S. 258, 268 n. 3, 113 S.Ct. 1213, 1220 n. 3, 122 L.Ed.2d 604 (1993). [footnote omitted]. A second approach to referral has the trial court certify a question to the appropriate agency. [citation omitted]. A third approach has the trial court request an amicus brief from the appropriate agency. [citations omitted]. We believe the approach taken by the United States Supreme Court in *Reiter* will usually be required, although requesting an amicus brief from an agency may help expedite litigation where referral is not required under Part II–B–1, *supra* [where one, but less than all, of the issues in the case requires exhaustion of remedies]. We believe there is much merit in the certified question approach and have asked our Rules Committee to make a recommendation to us in that regard.

*Austin Lakes Joint Venture*, 648 N.E.2d at 648–649. There would appear to be no existing mechanism by which the trial court can demand or request a determination from the agency. Therefore, we hold that Dozier is required to take the issue formally before the IURC.[9] Although Dozier must resolve the issue of NIPSCO's denial of service within the administrative framework, the trial court had subject matter jurisdiction to consider Dozier's claim for a preliminary injunction.

### ISSUE II

Having found that the trial court had subject matter jurisdiction to grant a preliminary injunction, we address NIPSCO's argument that the trial court erred by issuing a preliminary injunction in violation of Ind.Tri-

al Rule 65 and by finding that Dozier would suffer irreparable harm. We hold that Dozier failed to sustain his burden of proving irreparable harm. Therefore, we need not address Dozier's argument that the trial court's order also violated T.R. 65.

■ The grant or denial of a preliminary injunction rests within the equitable discretion of the trial court and will be reversed only upon a showing of abuse of discretion. *T.H. Landfill Co. v. Miami County Solid Waste Dist.*, 628 N.E.2d 1237, 1238 (Ind.Ct.App.1994). Nevertheless, the power to issue an injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor. *Id.* at 1238. In determining whether the trial court abused its discretion, we look to the trial court's findings of fact required by Ind.Trial Rules 65 and 52. *Fumo v. Medical Group of Michigan City, Inc.*, 590 N.E.2d 1103, 1107 (Ind.Ct.App.1992), *reh'g denied, trans. denied.* In determining whether an abuse of discretion exists, we determine whether the findings validly support the court's decision. The findings will not be set aside unless clearly erroneous. *Id.* at 1107–08.

Discretion to grant or deny an injunction is measured by several factors: (1) whether the plaintiff's remedies at law are inadequate, causing irreparable harm pending resolution of the substantive action; (2) whether the plaintiff has at least a reasonable likelihood of success at trial; (3) whether the plaintiff's threatened injury outweighs the potential harm to the defendant resulting from the granting of the injunction; and (4) whether the public interest will be disserved.

*Fumo*, 590 N.E.2d at 1108. If the plaintiff fails to establish one or more of those requirements, the trial court's grant of a preliminary injunction is an abuse of discretion requiring reversal. *Xantech Corp. v. Ramco*

9. Although our holding under Issue II requires that the trial court dissolve the preliminary injunction, we note that, in applying this holding to future cases, trial courts should be mindful that a plaintiff who has been granted a preliminary

injunction should not benefit from the trial court's preliminary injunction while procrastinating in his obligation to pursue the administrative process. *See supra* note 7.

*Industries, Inc.,* 643 N.E.2d 918, 921 (Ind.Ct. App.1994).

Although there are limited circumstances in which a utility customer should be granted preliminary injunctive relief, the case at bar does not present such circumstances. The trial court found that Dozier would suffer irreparable harm in that he would be without heat during the winter months. However, the record lacks the facts to support the trial court's finding. Our review of the record leads us to conclude that Dozier failed to carry his burden in proving that he will suffer irreparable harm. There is no evidence in the record that Dozier could not have avoided his situation or that Dozier had no suitable alternatives. There is no evidence in the record that Dozier did not have access to the money with which to pay his outstanding bill and the deposit required by the utility.[10] Where a plaintiff requests a preliminary injunction that requires a public utility to provide service during the administrative resolution involving a deposit or nonpayment, the evidence should clearly show that any harm was unavoidable. The grant

of a preliminary injunction is a powerful equitable tool to be used only in clear and plain cases. *Laux v. Chopin Land Associates, Inc.,* 615 N.E.2d 902, 905 (Ind.Ct.App.1993), *reh'g denied, trans. denied.* As the appellant points out, there is no evidence in the record as to why Dozier failed to pursue an alternative and failed to take any action from July 1995 until he filed his complaint in October 1995. In essence, Dozier's failure to act contributed to his situation of being on the brink of winter without service or an alternative source of heat.[11] He requested or inquired about service in July of 1995 but failed to make any further request or file a complaint with NIPSCO or IURC. Having found that the facts do not support a finding that Dozier proved irreparable harm, we hold that the trial court's grant of a preliminary injunction is an abuse of discretion requiring reversal.[12] See *Xantech Corp.,* 643 N.E.2d at 921.

Although we are sympathetic to the amicus argument that indigent persons have been denied legal service as a result of past debts for utility services, this is an issue that must

10. Dozier filed an affidavit of poverty to support his request that the trial court allow him to commence his action without being required to pay filing fees or advance costs or to give security by way of deposit. However, Dozier offered no further evidence that he lacked the ability to pay his delinquent bill and the damage deposit requested by NIPSCO. We believe the better practice is for the movant to provide testimony and/or additional evidence to support his contention that he is unable to pay the disputed amount. In *Indiana & Michigan Electric Co. v. Southern Wells School Building Corp.,* 258 Ind. 75, 279 N.E.2d 228 (1972), our supreme court found that a preliminary injunction enjoining the electric company from discontinuing electric service to a school corporation was improperly issued. The court held that the remedy at law was adequate, noting that:

> Appellees contended there would be irreparable damage if the electricity were discontinued and most likely this would have been so. However, there was no showing that present funds were not available to pay the contested amount. Appellees could then pay the electric bill in full and bring an action to recover the alleged overcharge.

*Id.* 279 N.E.2d at 229.

11. A preliminary injunction being a powerful equitable tool, the equitable maxim, "equity aids the vigilant, not those who slumber on their rights," is applicable to Dozier's failure to act. Although a three month time period may appear

to be a short slumber, given the circumstances of his case, Dozier's failure to take action has clearly contributed to his approaching the winter months without securing a source of heat. Given the administrative time frame for complaints, the matter could have been resolved prior to the trial court's order.

12. Although we need not address appellant's argument that the trial court failed to conduct a hearing or provide adequate findings of fact, we do note that the trial court's findings of facts are clearly lacking. See *Metropolitan Development Commission v. Goodman,* 588 N.E.2d 1281, 1284–1285 (Ind.Ct.App.1992) (the purpose of special findings is to provide a theory of the judgment). Additionally, the trial court is required to balance the consequent hardships of both parties with the effect of the injunction upon the public interest. *Fumo,* 590 N.E.2d at 1108. Since the findings of the trial court do not reflect consideration of all competing interests or disclose the reasons for the result reached, this would also warrant dissolving the preliminary injunction. Clearly, there is a public interest in requiring uncreditworthy customers to pay a deposit prior to receiving utility service. The purpose is to protect the utility from incurring costs associated with delinquent customers. Opening more than a narrow path for preliminary injunctions would subject the utilities to providing indefinite and forced services to a great number of customers from which the utilities may never recover.

be resolved by exhausting the administrative process. If, as the amicus brief contends, many indigent persons have been denied utility service as a result of past debts for utility services, they are free to pursue the administrative process in challenging whether this is an acceptable practice by utilities. This is apparently the underlying issue in this case. After the exhaustion of the administrative remedies, they are free, as is Dozier, to seek judicial review. *See Indiana Utility Regulatory Commission v. Gary Joint Venture,* 609 N.E.2d 7, 10 (Ind.Ct.App.1993), *reh'g denied, trans. denied* ("If the IURC decides the issue adverse to their position and enters a final order in this dispute, the mall owners will be free to avail themselves of the appeal normally available [to] parties seeking redress from the administrative decisions.").

We are not willing to provide a course by which individual customers, *except in extreme situations,* can obtain a preliminary injunction requiring a utility to provide services while the customer pursues administrative remedies. Based on our above examination of Dozier's circumstances, including his lack of action and his inability to carry his burden of proving irreparable harm, Dozier's complaint is not an extreme situation warranting a grant of preliminary injunction. Therefore, the decision is reversed and the preliminary injunction is ordered dissolved.

Reversed.

STATON and RUCKER, JJ., concur.