**BROADWAY RADIOLOGY SERVICES, INC., Andrei S. Dragomer, M.D. and Tulsi C. Sawlani, M.D., Ivan L. Chermel, M.D., Shodan L. Patel, M.D., Francis X. Roche, Tambarahallia A. Nagaraja, M.D., Shailesh Bhatt, M.D., Thomas J. Maginot, M.D., Jonathan Kahn, M.D., Richard Lichtenberg, M.D., and Michael Azodo, M.D., Appellants–Defendants,**

v.

**John C. TRICOU, M.D., Appellee–Plaintiff.**

No. 45A03–9908–CV–320.

Court of Appeals of Indiana.

March 14, 2000.

George W. Carberry, Kathryn D. Schmidt, Burke Costanza & Cuppy, LLP, Merrillville, Indiana, Attorneys for Appellants Broadway Radiology Services, Inc., Andrei S. Dragomer, M.D.

Greg A. Bouwer, Spangler, Jennings & Dougherty, Merriville, Indiana, Attorney for Appellant Ivan L. Chermel, M.D.

Marshall J. Goldsmith, Highland, Indiana, Attorney for Appellants Shodan L. Patel, M.D., Francis X. Roche, M.D., and Tambarahallia A. Nagaraja, M.D.

N. Kent Smith, Letha S. Kramer, Hall, Render, Killian, Heath & Lyman, P.S.C., Fort Wayne, Indiana and Marion, Indiana, James T. Walker, James T. Walker, Professional Corporation, Merriville, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellants-defendants Broadway Radiology Services, Inc., et al. (collectively, BRS) bring this interlocutory appeal from the trial court's grant of injunctive relief in favor of appellee-plaintiff John C. Tricou, M.D. The court's order enjoined BRS from terminating Dr. Tricou's contract or from doing any other act in furtherance of the threatened termination and ordered BRS to maintain the status quo in all respects until a hearing could be held on plaintiff's complaint for declaratory judgment. The order also required of Dr. Tricou a security of $50,000.

Specifically, BRS argues that the trial court abused its discretion in admitting evidence and, in turn, made clearly erroneous findings of fact based upon the wrongfully admitted evidence. In addition, BRS maintains that the entry of a preliminary injunction was an abuse of discretion. Finally, it argues that the court erred in not

finding Dr. Tricou estopped from challenging the existence of the corporation with which he had signed contracts.

## FACTS

BRS was incorporated under the Indiana Medical Professional Corporation Act on December 10, 1976, with the purpose of providing medical services. Kazys G. Ambrozaitis, M.D. was the incorporator, subscriber, and only shareholder in 1976, holding 200 shares. At the time of incorporation, BRS adopted a code of by-laws. BRS was granted a "Certificate Medical Professional Corporation" of the State of Indiana by the Board of Medical Registration and Examination of Indiana in December 1976. Record at 1758. Also in December 1976, the first meeting of the "stockholders" of BRS was held, at which the single stockholder, Ambrozaitis, was found present, and the other, non-stockholders present were elected to the board of directors. R. at 1765–66. The first meeting of the directors was subsequently held in the same month. BRS filed its "Election by a Small Business Corporation" with the Internal Revenue Service and received its employer identification number in February 1977. R. at 1739.

From the time that the corporation was formed, Dr. Ambrozaitis and two other physician-independent contractors provided radiological services. Dr. Ambrozaitis was president of the corporation for approximately ten years, during which time the original group expanded. The group functioned in a democratic manner and made decisions by discussing issues and by voting when there were different opinions on such questions as hiring physicians and buying equipment. However, Dr. Ambrozaitis made final decisions on all major issues after considering group input. When Dr. Ambrozaitis was preparing to retire, he proposed that the stock in BRS be distributed among all of the physician contractors, but the physicians then contracting with the corporation decided against this. They remained independent contractors.

Thereafter, Dr. Abrozaitis sold 102 shares of his stock to Dr. Choslovsky, and 98 shares to Eugene Balter, M.D. Dr. Choslovsky became president and ran the corporation until 1995. Like his predecessor, he ran the group democratically but made all final decisions after considering group input. Then in 1995, the present shareholders and officers took over control of the corporation. Andrei S. Dragomer, M.D. succeeded to the 102 shares of Dr. Choslovsky and the presidency, and Tulsi C. Sawlani, M.D. succeeded to the 98 shares of Dr. Balter and the vice-presidency. With Ivan Chermel, M.D., Dr. Dragomer and Dr. Sawlani serve as the current members of the Board of Directors operating the corporation.

Since its inception, BRS has been a professional corporation in good standing. It has filed corporate tax returns each year of its existence. BRS contracts with Methodist Hospital, Inc. (the Hospital) to provide radiology services at both the Northlake and Southlake campuses. Under this contract, BRS contracts with physicians specializing in diagnostic radiology, radiation therapy, and oncology services. Currently, eleven physicians and five professional corporations have independent contractor agreements with BRS. The two independent contractors who provide only radiation therapy and oncology services are paid a share of the total fees received by BRS for radiation therapy and oncology services. The remaining contracting parties, Dr. Tricou among them, perform radiological diagnostic services and receive a share of the total fees for those diagnostic services.

Under the agreement with the Hospital, the Chief of the Division of Radiology is to have the authority to hire and fire professional radiologists. The Hospital expects the Chief of the Division of Radiology, Dr. Andrei S. Dragomer, also President of BRS, to make all executive decisions with regard to the hiring and termination of

radiologists who provide services in the Division of Radiology at the Hospital.

Appellee-plaintiff Dr. Tricou signed three contracts with BRS, beginning in 1992. The first contract provided for a one-year employment term at a fixed salary and ninety days' notice for termination. This contract originally provided a sixty-day notice requirement. However, after consulting a lawyer regarding the contract, Dr. Tricou requested and was granted the ninety-day notice provision. The contract stated expressly that he was an independent contractor and would carry his own medical malpractice insurance. It also provided that he should not be deemed an employee, agent, or servant of the corporation.

Dr. Tricou's second contract was similar to the first in that it provided for an independent contractor relationship, a set salary, and a notice provision of 60 days for termination. Again, Dr. Tricou was required to carry his own medical malpractice insurance.

In 1994, Dr. Tricou entered into his third independent contractor agreement with BRS, which was similar to the first two in all aspects except for the terms of his compensation. This was provided for as follows:

*Compensation* : In consideration of the services to be provided by Contractor hereunder, the Corporation shall pay the Contractor one full share of net distributable diagnostic service income received by the Corporation and distributable to its independent contractors providing professional radiology services on behalf of the Corporation. For purposes of this agreement, "net distributable diagnostic service income" shall be defined as total fees received by the Corporation for diagnostic radiology services, less business expenses of the Corporation allocable to diagnostic radiology services. Compensation shall be paid to Contractor in monthly installments in the first week of the calendar month following each calendar month in which services are provided hereunder.

As additional compensation payable hereunder, upon termination of this agreement for any reason whatever, Contractors shall be entitled to distribution of a proportionate share of collectable accounts receivable for diagnostic radiology services. Contractor's share shall be determined by the billing and collection representative then retained by the Corporation, whose decision shall be conclusive, final and binding on the parties hereto. Such compensation shall be paid to Contractor in twelve (12) equal monthly installments and shall be subject to adjustment based upon the value of actual collective receivables and the fees for collecting such receivables during such 12–month period.

R. at 373–74. During the entire period that Dr. Tricou worked for BRS, he maintained his own medical malpractice insurance and paid for his own continuing medical education, professional dues, and licenses. He did not at any time inform his insurance carrier that he was anything other than an independent contractor. He never received shares of stock in BRS. For his entire period of employment with BRS, Dr. Tricou received Forms 1099 reporting his income as an independent contractor. He filed federal income tax returns, including a Schedule C, indicating that he was a physician conducting his own business, radiology consultant. He never received a K–1 partnership form to file with his income tax returns.

Dr. Tricou testified over objection that he had been told he was coming into a partnership by Dr. Choslovsky. However, Dr. Choslovsky stated in his affidavit that he had not told Dr. Tricou or any physician contractor that he was buying into a partnership. Dr. Dragomer testified that references to individual contracting physicians in the group as "partners" were meant in a collegial but not a legal sense. Dr. Dragomer never told Dr. Tricou or any

other physician that he was buying into a partnership because of sharing in the corporation's receivables. No one represented to Dr. Tricou that a majority vote was required to terminate his contract. Dr. Tricou testified that he just "assumed" a simple majority was necessary. R. at 666. Moreover, Dr. Tricou testified that, at a January 1998 meeting of physician contractors, there was again discussion and debate about distributing the stock of the corporation among all of the physicians. Dr. Tricou admitted that he told Dr. Dragomer that they should reorganize to make sure that everyone was a co-owner.

Testimony and evidentiary depositions revealed that the sharing of receivables is a method of compensation and did not signify that the physicians receiving payment were buying any assets of BRS or any ownership interest in it. In the first year that a contractor is paid a portion of receivables, he or she takes a reduction in the monthly amount distributed for one year because, due to a lag in payment from those receiving services, the portion of receivables does not represent income generated in part by that new contractor for up to 120 days. Prior to 1991, the corporation closed its books and required those new to the compensation pool to wait as long as 120 days until their own fees were paid and put into the compensation pool. The certified public accountant for BRS testified that BRS had adopted another methodology of continuing the monthly pay of a physician new to the compensation pool and deducting a determined amount from his income, and that this serves the same purpose of making income reflect fees generated.

Dr. Tricou filed his complaint for declaratory judgment and preliminary injunction after his contract with BRS was terminated by a letter dated April 14, 1999. Dr. Tricou alleged that BRS acted as a partnership in all respects and therefore, his termination without a vote of all other independent contractor physicians performing services for BRS was invalid. He named as defendants fourteen of sixteen independent contractors with BRS. Dr. Tricou also requested that the court enter a preliminary injunction preventing BRS from terminating his association with it.

The trial court held a hearing on the request for preliminary injunction on June 11, 1999. Dr. Chermel, one of the defendants and one of the members of the BRS board of directors, filed a motion to dismiss, which the court denied.

After a second hearing on June 15, 1999, and a third on June 21, 1999, the court received proposed findings of undisputed fact and conclusions of law from several parties. On June 23, 1999, the court entered its Findings of Fact, Conclusions of Law and Order granting injunctive relief. The trial court's order read:

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. Defendants Broadway Radiology Services, Inc., and Andre S. Dragomer, M.D., Rulsi [sic] C. Sawlani, M.D. and Ivan L. Chermel, M.D., in their capacities as Directors of Broadway Radiology Services, Inc. are hereby enjoined from terminating Dr. Tricou's contract.

2. In addition, Broadway Radiology Services, Inc. and Andre S. Dragomer, M.D., Tulsi C. Sawlani, M.D. and Ivan L. Chermel, M.D., are hereby enjoined from doing any other act in furtherance of the threatened termination and are ordered to maintain the *status quo* in all respects until a hearing can be held on plaintiff's Complaint for Declaratory Judgment and until further order of this Court.

3. Security for the preliminary injunction is set at $50,000. This amount was previously posted in cash with the Clerk of the Court and shall remain on deposit until further notice of this Court.

R. 232–233. BRS now appeals.

## DISCUSSION AND DECISION

BRS contends that the entry of a preliminary injunction was an abuse of discre-

tion. Specifically, BRS maintains that none of the factors which the court must consider before granting a preliminary injunction have been met in this case. We address this issue first because we find it dispositive.

We note initially that an injunction is an equitable remedy which should be used sparingly by the courts, and such relief should not be granted except in rare circumstances when the law and facts are clearly in the moving party's favor. *Northern Indiana Public Service v. Dozier*, 674 N.E.2d 977, 989 (Ind.Ct.App.1996). The grant or denial of a preliminary injunction rests within the equitable discretion of the trial court and will be reversed only upon a showing of abuse of discretion. *Id.* A mandatory injunction requiring continued employment and pay is used only with caution and in cases of great necessity. *Indiana Pacers, L.P. v. Leonard*, 436 N.E.2d 315, 318 (Ind.Ct.App.1982). Furthermore, a trial court considering the entry of an injunction must decide:

1) whether the plaintiff's remedies at law are inadequate, causing irreparable harm pending the resolution of the substantive action;

2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial;

3) whether the plaintiff's threatened injury outweighs the potential harm to the defendant resulting from the granting of the injunction; and

4) whether the public interest will be disserved.

*Dozier*, 674 N.E.2d at 989 (citing *Fumo v. Medical Group of Michigan City, Inc.*, 590 N.E.2d 1103, 1108 (Ind.Ct.App.1992), *trans. denied*). If the plaintiff fails to establish one or more of the requirements, the trial court's grant of a preliminary injunction is an abuse of discretion. *Xantech Corp. v. Ramco Industries, Inc.*, 643 N.E.2d 918, 921 (Ind.Ct.App.1994).

In this instance, Dr. Tricou is alleging that BRS, a corporate entity for the past twenty-three years, is a *de facto* partnership. A partnership is defined as follows:

An association of two or more persons to carry on as co-owners a business for profit and includes for all purposes of the laws of this state a limited liability partnership.

IND.CODE § 23–4–1–6(1). The rules to be applied in determining the existence of a partnership are, in relevant part:

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that a person is a partner in the business, but no such inference shall be drawn if such profits were received in payment for the following:

(a) As a debt by installments or otherwise.

(b) As wages of an employee or rent to a landlord.

I.C. § 23–4–1–7. We conclude after an examination of all the evidence that the relevant facts are not in dispute and that the trial court's conclusions of law are in error. Dr. Tricou has failed to demonstrate even a reasonable likelihood of success at trial. Dr. Tricou signed three contracts with BRS over a period of several years, and each contract stated that he was an independent contractor. R. at 350–58, 360–68, 370–79. Dr. Tricou filed federal income tax returns stating that he was an independent contractor. R. at 469–500, 512–14, 537–42, 556–57, 570–71, 589–90. He never received a K–1 partnership form for purposes of income tax filing. R. at 613. He notified his medical malpractice insurance company that he was an independent contractor and did not otherwise notify the company when the form of his compensation changed. R. at 468. Dr. Tricou admitted that, at a January 1998 meeting he suggested that shares of the

company be distributed to all the contracting doctors so that they would be co-owners in BRS, thus demonstrating recognition that the contracting doctors were not partners. R. at 625, 627, 628. Dr. Tricou also conceded that no one had told him that a majority vote would be required to dismiss him and that he had "assumed" so. R. at 666. Even if all of the hearsay evidence suggesting that contracting doctors were referred to as "partners" were admissible, which we do not decide here, it does not suffice to refute the overwhelming evidence that BRS was not a partnership as that term is legally defined.

We are not convinced that the evidence sufficiently satisfies any of the other factors which the court must consider before granting an injunction. However, we need not decide the merits of the evidence supporting these factors because the failure to establish just one factor is sufficient to find that the trial court abused its discretion. *See Xantech Corp.*, 643 N.E.2d at 921.

For all of the above reasons, we reverse the trial court's order of a preliminary injunction against BRS, and we remand to the trial court for proceedings consistent with the opinion.

Judgment reversed and remanded.

SULLIVAN, J., and STATON, J., concur.